## HARRISON v. THE STATE.

1. Where an act established in a city a police court and provided that the mayor should be its presiding officer, without specifically designating the name by which such court should be known, an indictment charging the accused with carrying a pistol to the "mayor's court" of such city, sufficiently identified and described the court created by the act in question.
2. Though a judge permitted a jury who had tried a criminal case to be polled, and though one of them answered he had not agreed to the verdict, this court will not reverse a judgment refusing, on that account, to declare a mistrial, when it clearly appears that the permission to poll ought to have been refused altogether, for the reason that the time within which the jury could properly have been polled had already expired before the permission to poll was asked.

Argued February 16,—Decided February 23, 1897.

Certiorari. Before Judge Hart. Baldwin superior court. January term, 1897.

*Roberts & Pottle*, for plaintiff in error. *H. G. Lewis, solicitor-general*, by *Anderson, Felder & Davis*, contra.

Lumpkin, Presiding Justice.

The act of February 13th, 1854, to amend the charter of the city of Milledgeville (Acts of 1853-4, p. 261), among other things provided, "that from and after the passage of this act, a police court shall be established and held in the city of Milledgeville, for the trial and punishment of all violations of the laws and ordinances of said city.  .  .  . The mayor of said city shall be the presiding officer of said court." Harrison was indicted in the superior court for a misdemeanor, the charge being that he "did carry about his person a pistol to and at a court of justice, to wit: the mayor's court of the city of Milledgeville." The case was transferred to, and tried before a jury in, the county court of Baldwin county. The accused demurred to the indictment, alleging, "there is no such court as the mayor's court, said court being the police court of the city of Milledge-

ville." The demurrer was overruled, and the accused found guilty.

It appears that the jury retired to their room for consultation about the time for the court to take its noon recess, and counsel for both sides consented that if the jury should agree upon a verdict before the court convened after dinner, the foreman might seal the same, keep it until the afternoon session, and then publish it in the usual manner. When the court met again, it was ascertained that a verdict had been agreed upon, and that the jurors were all present. The call of the jury was waived, and the solicitor received from the foreman a sealed package, broke the same, and read the verdict. The jurors retained their seats in the jury-box, and no one of them, upon the reading of the verdict, indicated that it was not his finding. The judge then inquired of the accused if he had any reason to allege why sentence should not be pronounced. The accused thereupon stated he knew of no reason, except that he was not guilty and had been wrongfully convicted, "making a little talk of some few minutes." His counsel then made an appeal in his behalf, and thereupon the judge announced what the sentence was, and handed the same to the clerk with direction to enter it upon the minutes. This being the last case upon the docket, the court, after thanking the jury for their promptness, etc., discharged them for the balance of the term. They then dispersed from their seats, and gathered around the clerk's desk for the purpose of receiving the certificates entitling them to draw their pay as jurors. While these certificates were being distributed, one of the counsel for the accused stated to the court that he had just been informed the verdict which had been published was not that of all of the jurors, and asked that they be polled. The court expressed the opinion that the request for the polling of the jury had come too late, but nevertheless allowed the polling to proceed. One of the jury then announced that he had not agreed to the verdict as published. A motion for a mis-

trial was thereupon made and overruled, the judge being of
the opinion that he had erred in allowing the jury to be
polled at all. It further appears that the time which elapsed
between the publication of the verdict and the request for
polling the jury was "at least ten or fifteen minutes."

The case was carried to the superior court by certiorari,
and the certiorari was overruled. The questions presented
for consideration are indicated in the head-notes.

1. It will be observed that the act of 1854 did not under-
take to provide that the court thereby established in the city
of Milledgeville should be known and designated as "the
police court." In other words, it did not attempt to give this
court a specific name. If it had done so, it ought, in strict-
ness, to have been referred to in the indictment by that
name. As we understand it, the words, "police court," were
merely used in a descriptive sense to indicate the general
character and jurisdiction of this particular tribunal. Its
presiding officer was to be the mayor, and it is therefore
quite natural that it should colloquially be termed "the
mayor's court," and for all ordinary purposes this designa-
tion was about as accurate and as well capable of being un-
derstood as if it had been called "the police court." It can
hardly be doubted that any person within its jurisdiction
would very well understand what court was meant by the
expression, "the mayor's court of the city of Milledgeville."
In this connection, see *Hill* v. *The State*, 53 *Ga.* 472, the
principle of which, as to the point in question, is applicable
here.

2. The county judge erred in allowing the jury to be
polled at all, under the circumstances above recited. The
request to poll was certainly made too late. We do not care
to discuss the matter at length. It is obvious that there had
been too much time and opportunity for afterthought, or for
suggestions from an outside source to be made to the jurors,
which might induce them to withdraw their assent to the
verdict. It may be that the sentence imposed by the pre-

siding judge had a tendency towards producing such a result. He properly corrected his initial error by ignoring the response of one of the jurors that he had not agreed to the verdict, and allowing the conviction to stand.

*Judgment affirmed. All the Justices concurring.*