[Crim. No. 869.   Second Appellate District, Division Two.—June 16, 1922.]

## THE PEOPLE, Respondent, v. JAMES MACKEY et al., Defendants; ALBERT MACKEY, Appellant.

[1] CRIMINAL LAW—LARCENY—POSSESSION OF STOLEN PROPERTY—INSTRUCTIONS.—In this prosecution for the larceny of certain calves which were found in the possession of the defendants at the time of their arrest, in which one of the defendants testified to a state of facts which, if the jury believed him, would have amounted to a sufficient explanation of defendants' possession of the calves, while the instruction of the court on the subject of the possession of the stolen property might have been more skillfully drawn, it was not error to let it go to the jury in the form in which it was given, in view of the other instructions which were also given.

[2] ID.—IMPEACHMENT OF WITNESS—PRIOR DELUSIONS.—A witness for the prosecution may not be impeached by testimony of his divorced wife to the effect that during her married life with him he was subject to "delusions—to see and tell things he never did see"; and the prosecution's objection to a question asked for the purpose of eliciting such testimony is properly sustained.

[3] ID.—DISCHARGE AFTER PROBATION—IMPEACHMENT.—In view of the provision of subdivision (e) of section 1203 of the Penal Code that, as to every defendant who has fulfilled the conditions of his probation for the entire period thereof, "the court shall thereupon dismiss the accusation or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted," a person who is charged with the commission of a felony, and who pleads guilty and is admitted to probation, is not subject to impeachment as a witness, under section 2051 of the Code of Civil Procedure, after his probationary period has passed and he has been discharged.

[4] ID.—CONVERSATION BETWEEN DEFENDANT AND PROSECUTING WITNESS —CORROBORATION—HEARSAY—PREJUDICIAL ERROR.—In a prosecution for the larceny of certain calves, one of the defendants, when on the witness-stand having detailed a conversation that took place between himself and the prosecuting witness on a certain day at the former's ranch, which conversation was directly explanatory of the possession of the calves by the defendants at the time of their

3. Impeaching witness by showing that he has been indicted, note, 16 **Ann. Cas.** 872.

Pardon or commutation as affecting proof of conviction to impeach credibility of witness, note, 47 **L. R. A. (N. S.)** 215.

arrest, and, if believed by the jury, established their innocence, and said defendant having testified that the conversation took place in the presence of a certain third party, it is prejudicial error to refuse to permit said third party to testify to such conversation, on the ground that his testimony would be hearsay, after said third party has been called to the stand and testified that he was at the ranch on the day in question and heard the conversation.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Harry W. Horton and Ernest R. Utley for Appellant.

U. S. Webb, Attorney-General, and Arthur W. Keetch, Deputy Attorney-General, for Respondent.

WORKS, J.—Defendants, who are brothers, were informed against together and were tried together for the larceny of fourteen calves from the ranch of one Forsberg. Defendant James Mackey was acquitted of the charge, but defendant Albert Mackey was found guilty. The latter appeals from the judgment of conviction and from an order denying his motion for a new trial.

The stolen calves were in the possession of defendants at the time of their arrest and at the trial appellant testified to a state of facts which, if the jury had believed him, would have amounted to a sufficient explanation of defendants' possession of the calves. [1] The trial court gave to the jury the following instruction:

"The mere possession of stolen property, unexplained by the defendants, however soon after the taking, is not sufficient to justify a conviction; it is merely a guilty circumstance, which, taken in connection with other testimony, is to determine the question of guilt. Yet, if you believe from the evidence, that the defendants were found in the possession of the property described in the evidence, or claiming to be the owner thereof, this is a circumstance tending in some degree to show guilt, but not sufficient standing alone and unsupported by other evidence, to warrant you in finding them guilty. There must be, in addition to proof of possession of property stolen, proof of corrobo-

rating circumstances tending of themselves to establish guilt. These corroborating circumstances may consist of acts, or conduct or declarations of the defendant, or testimony of other witnesses, or any other circumstances tending to show the guilt of the defendants.

"If the jury believes from the evidence, the property mentioned in evidence, to wit: fourteen calves, were stolen, and was seen in the possession of the defendants shortly after being stolen, the failure of the defendants to satisfactorily account for such possession, or to show that such possession was honestly obtained, is a circumstance tending to show their guilt, and the defendants are bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence disclose any such."

Except as to minor and unimportant details this instruction is identical with one approved by this court in *People* v. *Alba*, 52 Cal. App. 603 [199 Pac. 894], but appellant nevertheless contends that the giving of the instruction was error. It will be noted that in the opinion in *People* v. *Alba* a certain instruction D9 is referred to as in some degree clarifying the instruction in that case which is practically a prototype of the instruction which we have quoted above as having been given in this case, the approval of the questioned instruction in *People* v. *Alba* being largely grounded on the fact that instruction D9 accompanied it. Appellant here contends that no instruction like D9 was given in the present case and that is true; but an instruction did go to the jury in which they were told that "if all you find from the evidence here before you, is that the defendants were found in possession of calves alleged and described in the information, you cannot find the defendants guilty of the charge here brought against them. The mere possession of stolen property is not sufficient to maintain a charge of grand larceny, but such possession, if in this case there is any evidence of such possession, must be corroborated by other evidence in some way connecting the defendants with the charge of larceny, sufficient to satisfy your minds beyond a reasonable doubt that they are guilty of the crime here brought against them, to wit that of larceny, which, according to the Penal Code

of the State of California, is the felonious stealing, taking, carrying, leading or driving away of personal property of another, and unless you are satisfied beyond a reasonable doubt that such evidence, if any such you find is sufficient to corroborate the possession of stolen property, you cannot find the defendants guilty of the charge here brought against them.'' When we come to consider the effect of the instruction to which exception is taken by appellant we must view it in connection with the instruction just set forth above, as a matter of course. Taking the two together it is apparent that the only cause for complaint on the part of appellant, if any there be, lies in the fact that the instruction to which objection is made contains in its first paragraph the words ''unexplained by the defendants,'' and in its second the words ''the failure of the defendants to satisfactorily account for such possession, or to show that such possession was honestly obtained.'' Appellant contends that these two expressions amount to an instruction that appellant had actually failed to explain the possession of the calves by him. Undoubtedly, it were better if the trial court had framed the two expressions, respectively, thus: ''unexplained by the defendants, if you find from the evidence that such possession has not been explained to your satisfaction,'' and ''the failure of the defendants to satisfactorily account for such possession, or to show that such possession was honestly obtained, if it appears to you from the evidence that they have not satisfactorily accounted for such possession, or shown that such possession was honestly obtained.'' Notwithstanding, however, that the assailed instruction was not as skillfully drawn as it might have been, we are not prepared to say that it was error to let it go to the jury in the form in which it was given. The jury was not actually told that appellant had failed to explain his possession of the calves. In truth, it was told in effect that the defendants were ''satisfactorily'' to account for the possession to someone, and, a few lines further on in the instruction, that ''the defendants *are* bound to explain the possession,'' etc., the italics being ours. All of these expressions as to an explanation of the possession must be construed together with instructions elsewhere given by the court. These were to the usual effect that ''It is the duty of the jury to de-

cide whether the defendant be guilty or not guilty of the
offense charged considering all the evidence submitted to
you in the case"; that "It is your duty . . . to take into
consideration all of the testimony given by the witnesses,
and to weigh the same with care"; and that "the jury are
the exclusive judges" of the credibility of witnesses. In
addition to these stock expressions, the jury was instructed
that "the interest of a defendant in the result of an action
does not deprive him of the benefit of his own testimony.
The law makes him a competent witness in his own behalf,
and his testimony is entitled to consideration by you, the
same as that of any other witness, and in considering the
defendant's testimony, you should be governed by the same
rules that control you in weighing the testimony of other
witnesses who have given testimony before you in this trial.
A defendant in a criminal action is considered innocent
until the prosecution establishes the contrary by convincing
proof and beyond a reasonable doubt. His evidence is en-
titled to full credit when you believe that he has spoken
the truth, and the evidence of such witness is sufficient
proof to any fact, to which you believe he has truthfully
testified." During the trial the defendants made a de-
termined attempt to account by their testimony for the
possession of the calves, as we have already observed. It
was impossible for the jury not to have realized that this
evidence showed an effort to make the "explanation" re-
ferred to in the instructions. Considering the several parts
of the charge to the jury which told its members of their
functions as judges of the facts, and considering especially
the instruction in which the jury was carefully and force-
fully informed as to the attitude which it must hold toward
the testimony of the defendants, it appears to us that its
members must have understood clearly that the "explana-
tion" was for their ears alone and that the credence which
was to be given it was for their exclusive judgment. We
are convinced that the instruction of which complaint
is made, despite the inaccuracies we have noticed in it,
worked no prejudice to the rights of appellant and that
it was not error to give it, at least, when all the instruc-
tions are taken together.

[2] Among the witnesses for the prosecution was one
Leistikow. The divorced wife of this witness was called

by the defense and was asked if, during her married life
with him, she had ever noticed that he was subject to ''de-
lusions—to see and tell things he never did see.'' An
objection to the question was sustained and the ruling is
assigned as error. We can conceive of no theory upon
which the question was proper. It was not an impeaching
question, under the provisions of the Code of Civil Pro-
cedure, section 2051, providing how witnesses may be im-
peached. The query was not proper under subdivision 10
of section 1870 of the same code to the effect that on a
trial the court may receive ''the opinion of an intimate
acquaintance respecting the mental sanity of a person, the
reason for the opinion being given,'' as it did not call
upon Mrs. Leistikow for an opinion respecting the ''mental
sanity'' of her former husband. On the whole, the pro-
pounded inquiry was nothing but a call for the statement
of a conclusion of the witness on the stand. Finally, it is
to be noted that the question sought to elicit an answer
concerning a state of facts existing, not at the time when
Leistikow testified, but during the period of his married
life with Mrs. Leistikow, the record showing that at the
time of the trial the two had been separated for more than
two and a half years.

[3] The next question to be considered is both novel
and interesting. Ruston, the principal witness against ap-
pellant, had been charged with the commission of a felony
and had pleaded guilty to the charge. He had been ad-
mitted to probation, and his probationary period had been
passed and he had been discharged prior to the trial of
the present action. After his testimony against appellant
had been received the defense offered in evidence the rec-
ord in the case in which he had entered a plea of guilty.
This offer was made for the purpose of impeaching Ruston
under the terms of the Code of Civil Procedure, section
2051, to the effect, in part, that a witness may be im-
peached by showing by ''the record of the judgment, that
he had been convicted of a felony.'' Objection was made
to the offer by the district attorney and the objection was
sustained. It is now contended that the ruling was errone-
ous.

It is provided in paragraph (5) of section 1203 of the
Penal Code that as to ''Every defendant who has fulfilled

the conditions of his probation for the entire period thereof," "the court shall thereupon dismiss the accusation or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted." This legislative mandate seems somewhat akin to the common-law rule under which one who has been pardoned through the exercise of executive clemency for the commission of a criminal offense is made a "new man," the effect of a pardon being, among other things, as stated in an early case, "to remove from the offender that disability to testify as a witness in a court of justice which, by the rule of the common law, was consequent upon his conviction of a felony" (*People* v. *Bowen,* 43 Cal. 439 [13 Am. Rep. 148]). We have long ago departed from the rule referred to in this quotation, that is, the rule of the common law which rendered convicted felons incompetent as witnesses. This departure has been taken in many jurisdictions in this country, including our own, and the rule has been displaced with great uniformity by one allowing proof of the conviction of such persons as affecting their credibility when they are offered as witnesses. The question now to be determined is, Does section 1203, Penal Code, set aside the right to so impeach such a witness where, after conviction, he has been admitted to probation and has passed through the probationary period? If we look to the case of pardons for an analogy in answering this question we find that the granting of that executive clemency does not destroy the right thus to impeach. Undoubtedly the general rule is that, although the grant of a pardon makes a "new man" of the pardoned individual, his manhood is not revived to the extent that he may not be confronted with the record of his conviction whenever he testifies as a witness. Despite the pardon he is still a convicted felon whenever the right to impeach him as such is brought in question (28 R. C. L., tit. "Witnesses," sec. 212; note to *Rittenberg* v. *Smith,* 47 L. R. A. (N. S.) 215). This, however, is far from settling the present question. The language which we have above taken from section 1203 is so strong and direct that it may destroy the right to impeach convicted felons who have been discharged after probation, notwithstanding that the exercise of the pardoning power

in a given case does not have that effect. The bearing of section 1203 upon the present question turns upon the construction to be given to two words in it. Is a convicted felon's liability to impeachment by the production of the record against him to be regarded either as a "penalty" or as a "disability"? Webster defines the word "penalty" in part, as "Penal retribution; . . . the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense; . . . Disadvantage, loss, or hardship due to some action, esp. to a transgression or error." That lexicographer gives the following definition of "disability," quoting it in full: "State of being disabled; deprivation or want of ability; absence of competent physical, intellectual, or moral power, means, fitness, or the like; an instance of such want or deprivation. *Disabilities* to perform what was covenanted. *Milton.* Chatham refused to see him, pleading his *disability. Bancroft.* Want of legal qualification to do a thing; legal incapacity, incompetency, or disqualification; also, an instance or cause of such incapacity." If these two key words of section 1203 were to be taken alone, as thus defined, the liability of a convicted person to be impeached as a witness by the production of the record made against him probably could not be regarded as a disability, although that liability might justly be regarded as a penalty; but they are not to be taken alone. The two words are together to be given a broad and far-reaching construction because the legislature has coupled with their use the mandate that, where a convicted felon who has been admitted to probation has passed the period of probation, "the court shall thereupon dismiss the accusation or information against such defendant." Of course, after a dismissal in such a situation, the defendant involved, if not still a convicted felon, remains in a practical sense one who has been convicted of a felony. We cannot avoid the conclusion, however, that the legislature intended in a legal sense, by directing a dismissal under such circumstances, to wipe out absolutely the entire proceeding in question in a given case and to place the defendant in the position which he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him. Such is the legal effect of the dismissal of a criminal

charge before conviction, and we are convinced that the law-making body intended, by section 1203, that the same effect should attend a dismissal after conviction. This view seems the more just when we consider the introductory portion of section 1203, the italics being ours: "After plea or verdict of guilty, where discretion is conferred upon the court *as to the extent of the punishment,* the court, upon oral suggestions of either party, or of its own motion, that *there are circumstances* which may properly be taken into view, either in aggravation or *mitigation of the punishment,* may in its discretion, refer the same to the probation officer, directing said probation officer to investigate, and to report, recommending either for or against release upon probation, at a specified time." On the whole, we conclude that the legislature intended by the enactment of section 1203 that no convicted person discharged after probation thenceforth should be regarded as one possessed of the degree of turpitude likely to affect his credibility as a witness. The trial court did not err in excluding the record against Ruston.

Ruston was not present at the trial in the superior court, the testimony above referred to as given by him having been presented to the jury by means of a reading of the transcript of his testimony before the committing magistrate. At the trial appellant objected to the presentation of Ruston's testimony in that form and now complains of its admission as error, the point made being that the district attorney failed to use due diligence in procuring the personal attendance of Ruston at the trial. That officer presented much testimony going to show the efforts pursued by him in an endeavor to locate and to serve subpoena upon the missing witness and we have carefully read it all. Without reciting the contents of the record on the subject, we state our conclusion that sufficient diligence in the premises was shown and that the trial court did not err in allowing the reading to the jury of Ruston's testimony given at the preliminary hearing.

[4] Having now considered all the points made by appellant which are likely to arise upon a new trial, with the exception of the one question which requires a reversal of the judgment, we now approach a discussion of that question. It is presented by a complaint which appellant

makes of a palpable error committed by the trial court. Appellant when on the witness-stand detailed a conversation between himself and Ruston which occurred on a certain day at the former's ranch. This conversation evidenced a contract for the purchase by appellant from Ruston of the calves which defendants were charged with having stolen, it therefore being directly explanatory of the possession of the calves by defendants at the time of their arrest, and, if believed by the jury, establishing the innocence of both defendants. Appellant also testified that the conversation occurred in the presence of one Wiley Johnson. The, latter was called to the stand and testified that he was at the ranch on the day on which appellant had sworn that the conversation with Ruston took place. Johnson was then asked if he had overheard a conversation concerning calves between appellant and Ruston at the time and place which had been fixed by the former in his testimony and he answered that he had. He was then asked to state the conversation. To this question the district attorney made the utterly untenable objection that it called for hearsay and that appellant himself could testify to the conversation, "but no other person can testify to what he heard," and the objection was sustained. The attorney-general seeks to avoid the effect of this manifest error by asserting the claim, on two grounds, that the rights of appellant were not prejudiced by the ruling. The first of these grounds is that Johnson was permitted to testify that he had overheard the conversation between appellant and Ruston, although he was not allowed specifically to detail it, the jury thus being left to understand that Johnson vouched for the conversation as sworn to by appellant. We cannot adopt this view. In the first place, Johnson did not say that he had heard the conversation stated by appellant. Taking question and answer together his only statement was that he overheard "a conversation concerning calves" between Ruston and appellant. Whether this was the same conversation detailed by appellant could only have been determined by the jury after Johnson had been permitted to give his version of it. This would seem to conclude the point, but it may be remarked further that if the jury understood Johnson's answer to adopt the conversation as stated by appellant, the ruling of the court in effect told

them to disregard anything coming from Johnson as to the subject matter of it. This erroneous view was presented to the jury three times by the trial judge, the question having arisen twice when Johnson was on the witness-stand at different times, and in the third instance when the father of appellant was a witness and was apparently about to detail the conversation between Ruston and his son.

As a second ground upon which to avoid the effect of the error of the trial court in excluding Johnson's testimony as to the subject matter of the conversation between appellant and Ruston the attorney-general points to section 4½ of article VI of the constitution, providing that no judgment shall be set aside or new trial granted, "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In view of this contention of the attorney-general we have read carefully the voluminous record made in the trial of the case. After that reading we cannot uphold the contention. There was a sharp conflict on practically every material point in the evidence. Both defendants denied strenuously that they had committed the crime with which they were charged and they denied specifically the various items of evidence offered to fasten the offense upon them. Aside from some slight testimony by Leistikow, the only direct evidence of appellant's guilt was the testimony of Ruston, who, be it known, was originally charged jointly with the Mackeys with the theft of the calves, the charge against him having been dismissed before the preliminary hearing. Ruston's reputation for veracity was impeached by several witnesses. The credibility of Leistikow was assailed in the same manner and by an equal number of witnesses. On the face of the record a perfect *alibi* was established as to both defendants by at least four witnesses, this evidence being substantially corroborated by a fifth witness as to some of its features. Although there was but little difference in the evidence as to the two defendants, the testimony of Ruston being equally incriminating as to both, defendant James Mackey was acquitted, while appellant was convicted. After declaring appellant's guilt, the verdict contained the statement, "The jury ask leniency." Both of

the defendants appear to have been men of business stand-. ing in Imperial Valley, where the theft of the calves occurred. They owned a dairy in the valley at which from ninety to one hundred five cows were being milked at the time of the theft with which they were charged. No attempt was made to impeach their veracity. Under all these circumstances, it is quite possible that an acquittal of appellant might have resulted if he had been allowed the benefit of the corroboration of Wiley Johnson as to the conversation he had detailed as having occurred between Ruston and himself. As far as the record discloses Johnson was a disinterested witness and his testimony if given might very well have turned the tide in favor of appellant. We must say, as a final consideration in disposing of this question, that a reading of the record in the cause leaves us with grave doubts as to the guilt of appellant. The jury may have had good cause to view the question differently, as they had the opportunity of observing the appearance and demeanor of the various witnesses in giving their testimony. This opportunity is of course denied us. We can view the evidence only as the pages of the typewritten record present it to us and can determine the effect of the constitutional question upon that view alone as a basis. We are of the opinion that the case of the people is not aided by the provisions of section 4½ of article VI.

The judgment and the order denying the motion for a new trial are reversed and the cause is remanded.

Finlayson, P. J., and Craig, J., concurred.