## 29555. FAVORS v. THE STATE.

HILL, Justice.

The appellant, Joe Favors, appeals his conviction for the offense of murder and sentence to life imprisonment.

The record and transcript show that on the evening of November 16, 1973, the appellant shot Eddie Lee Gunn, that Gunn was taken to the hospital, that appellant was arrested early the following day for aggravated battery, that Gunn died on December 7, that a commitment hearing on the charge of murder was held on December 28, 1973, at which appellant's counsel cross examined Detective Owens, that appellant was indicted for murder on January 22, 1974, that the indictment listed 13 witnesses, that appellant's counsel made demand for a list of the state's witnesses on February 4 prior to arraignment, that the state furnished such list containing 25 names (12 names in addition to those shown on the

indictment) on February 20, that at the call of the case on Thursday, February 21, appellant's motion for continuance based upon the "late supplying" of the witness list was granted, thereby continuing the case from Monday, February 25, to Wednesday, February 27, and that upon the call of the case on February 27 appellant's objection to trial commencing that day was overruled.

The testimony given at the trial consisted of 7 witnesses for the state and the accused on his own behalf. Six of the 7 state's witnesses were listed on the indictment. The other witness was Detective Owens who had testified at the December 28 commitment hearing and whose name was on the February 20 witness list. Of the 7 state's witnesses, 3 were witnesses to the offense, 3 were police officers, and the other was a physician who treated the deceased on the night he was shot. Their testimony showed that the following occurred:

On November 16, 1973, at about 6:30 p.m., Michael Delk went to his common law wife's apartment in Marietta to see his child. Upon his arrival the only persons present were his wife (Melba Hines), her mother, and the child. About an hour later Melba's sister, Rosa Lee Hines, arrived at the apartment with her own baby. Subsequently, the appellant (Favors) and two companions arrived, stayed about 5 or 10 minutes, and left. The victim (Gunn) arrived at about 9:30 p.m. The victim and Delk went out on the back porch to discuss the sale of a .22 caliber pistol that the victim had. Delk took the gun from the victim and at some point placed it in his wife's dresser.

Appellant Favors returned to the apartment. The victim was standing in the kitchen door. Appellant was in the living room. Appellant drew a .38 caliber revolver, pointed it at the victim, said, "You don't believe I'll shoot you, do you?", and fired the pistol. The bullet struck the victim directly above the left eye, traversed a portion of the brain and exited at the rear of the head. The unconscious victim fell back into the kitchen. Appellant said, "I'm sorry," and left.

The police were summoned at about 9:44 p.m. and an ambulance was called to take the victim to the hospital.

Detective Owens conducted the investigation at the scene, including conversations with the eyewitnesses, Michael Delk, Rosa Lee Hines, and Melba Hines. He testified that after he had made his initial investigation, and after he had originally left the scene, Delk called him back and handed him a projectile which Delk had found about 2 or 3 feet from where the victim had been shot. During Detective Owens' investigation, he had photographs taken of the kitchen area where the victim was found.

During the trial, the state offered 7 photographs alleged to depict the scene following the incident, and the piece of metal described as a projectile which was found at the scene. The court admitted 3 of the photographs, over objection by the defense, and the piece of metal.

The appellant sought to have admitted into evidence a record of a burglary conviction of one of the eyewitnesses for purposes of impeachment. The state's objection on the ground that the witness had entered a plea under the First Offender's Act was sustained.

The defense called the appellant as a witness. He testified that he had had the pistol for 3 or 4 days, had previously shot it up in the air but had not loaded it himself, this having been done by another person in his presence. He testified further that he did not know the gun was loaded on the night in question, and that the shooting was an accident. At the conclusion of his testimony, the court pointed out that the pistol had not been described as being either a revolver or automatic or what. During the colloquy which followed, the court suggested that the witness could describe it, saying: "Well, you can ask him to draw a picture of it. Did it have a hammer on it, or how do you load it, or what? I think he has loaded it a couple of times. I think he can describe whether there was a cylinder in it or something here."

The trial court charged the jury as to crimes committed by accident, the presumption of innocence, reasonable doubt, murder (including malice), involuntary manslaughter, negligence, and other matters including unanimity of the verdict.

After about 3 1/2 hours, the jury returned for instructions on the definition of malice. The court recharg-

ed the definition of murder, including malice.

After further deliberation of about 2 hours the jury was recalled by the trial court for determination as to how they were numerically divided. The jury foreman indicated that the previous recharge changed the numerical division from 9 to 3 for one verdict to 9 to 3 for another verdict. The court asked if the jury wished clarification of any points of law. The foreman asked for a recharge on the difference between malice with intent and legal malice. The court charged the jury on the definition of murder, including malice. The jury foreman then asked for a charge on involuntary manslaughter and the court so recharged and the jury retired.

The court recalled the jury 45 minutes later, at 11:00 p.m., and instructed the jury as to the desirability of agreement, if possible.

Shortly after midnight, the trial was recessed. The following day, the foreman advised the court that one juror felt it necessary to hear the charge once again. When the court asked "On what part?", the foreman indicated that the individual juror might speak for himself. The juror asked for the law pertaining to murder and involuntary manslaughter and to malice and intent. The court so recharged and the jury retired.

After about 3 hours, the jury returned to the courtroom. Before receiving the verdict the court inquired of the foreman if the verdict was unanimous, and he replied in the affirmative. The court asked the jury as a whole if they had presented to the foreman the individual verdict of each juror. All twelve jurors indicated affirmatively. The verdict, guilty of murder, was received and read by the clerk. The court stated that under the verdict two penalties were possible, death or life imprisonment, and that since the state was not seeking the death penalty, the sentence was life imprisonment. Defense counsel asked that the jury be polled. The court stated that that had been done when the jury came in. The sentence was reduced to writing that same day.

1. Appellant enumerates as error the trial court's denial of his motion for continuance needed to interview witnesses whose names were disclosed by the state's witness list, in order to prepare for trial.

Article I, Sec. I, Par. V (Code Ann. § 2-105) of our Constitution provides in pertinent part that "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel; shall be furnished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded. . ."

Prior to 1966, Code § 27-1403 provided that "Every person charged with an offense against the laws shall be furnished, on demand, previously to his arraignment, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded." It is noted that this section of the Code added the words "previously to his arraignment" to the constitutional counterpart.

In 1966, Code § 27-1403 was amended to add the following (Ga. L. 1966, pp. 430, 431): "Without the consent of the defendant, no witness shall be permitted to testify for the State whose name does not appear upon the list of witnesses as furnished to the defendant unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence which the State was not aware of at the time of its furnishing the defendant with a list of the witnesses." By this amendment, the General Assembly provided a sanction, to wit: prevention of use of the testimony of an unlisted previously known witness. Cf. *Hicks v. State,* 232 Ga. 393 (207 SE2d 30).

In this case however, defense counsel did not invoke and had little or no opportunity to invoke the sanction. No unlisted witness was called to the stand by the state. Six of the state's witnesses who testified were listed on the indictment. The seventh state's witness, Detective Owens, had been known to defense counsel during the 2 months between commitment hearing and trial.

Rather than relying on the statutory sanction, the defense sought a continuance of the trial. The grant or denial of continuances in criminal cases is governed by different considerations (see Code Ann. § 27-2002, subject to the "benefit of counsel" provision of the Constitution, quoted above, Code Ann. § 2-105). *Blackman v. State,* 76 Ga. 288.

In *Blackman,* supra, the denial of a motion for continuance was reversed where it was shown that counsel, appointed on a Wednesday, unable to confer with the accused until at least Thursday evening, were unprepared for trial on Friday.

In *Fishman v. State,* 128 Ga. App. 505 (197 SE2d 467), the denial of a motion for continuance was reversed where the witness list, apparently containing seven names not shown on the indictment, was furnished defendant's counsel immediately prior to arraignment, after which the case was called for trial.

In the case now before us the defense had the names of the 12 persons not shown on the indictment from Wednesday, February 20, until trial commenced the following Wednesday, February 27, at least 6 full days. At the call of the case for trial on February 27, the ground of motion made was the "late supplying" of the state's witness list. No showing was made that appellant's attorney had been unable in those six or seven days to locate the newly-named witnesses. Under these circumstances, it does not appear that appellant was denied the benefit of counsel and the discretion of the trial court in denying the motion for continuance will not be reversed. *Dutton v. State,* 228 Ga. 850 (2) (188 SE2d 794); *Brawner v. State,* 221 Ga. 680 (9) (146 SE2d 737).

2. Appellant's enumerations of error regarding the admission of photographs of the scene of the shooting and the piece of metal found there, do not constitute grounds for reversal.

It is true that the photographs do not show any essential element of the crime; e.g., the shooting or death of the victim, malice, etc. They could however assist the jury in understanding the testimony of the witnesses to the shooting and were therefore admissible.

It is also true that Detective Owens admitted on cross examination that he could not state that the metal projectile caused the death of the victim. This piece of metal was referred to at trial by counsel and the detective as a "projectile," or "bullet." In this case there was no question such as which shot from which gun fired by which-person caused the victim's death. The defendant admitted that the victim was shot by the pistol held by the

defendant. The admission of the bullet was not reversible error. *Wilson v. State,* 215 Ga. 782 (2) (113 SE2d 447); *Powers v. State,* 172 Ga. 1 (15) (157 SE 195).

3. Appellant enumerates as error the exclusion of the "first offender record of conviction" of one of the witnesses who testified for the state. Contending that this exclusion constituted a denial of the right of cross examination, appellant recognizes that we are called upon here, as a matter of first impression in this state, to undertake to balance the protection afforded by law to a first offender with the right of a person accused of crime to cross examine the witnesses called against him. Shall the rights of the first offender, or those of the defendant charged with a crime, be protected at the expense of the other?

Generally a witness is subject to impeachment by introducing the record of conviction of a felony, or a crime involving moral turpitude. The fact of indictment, or arrest, or trial, standing alone is not a legal method of impeachment. Green, Georgia Law of Evidence, § 139; p. 346. It is the conviction which is determinative.

In this case the state contends that under our First Offender Act (Ga. L. 1968, p. 324; Code Ann. § 27-2727 et seq.), a person treated as a first offender is placed upon probation "without entering a judgment of guilt" (Code Ann. § 27-2727); that upon fulfillment of the terms of probation the first offender is discharged "without court adjudication of guilt," and that such discharge shall "completely exonerate" the defendant of any criminal purpose who shall thereafter "not be considered to have a criminal conviction" (Code Ann. § 27-2728).

In *State v. Wiley,* 233 Ga. 316, 317 (210 SE2d 790), the court pointed out that under our first offender statute, the trial "has, in effect, been suspended" during the period of probation and rehabilitation. Thus, under our law, the formal act of "conviction" is not completed for a person who satisfactorily completes the probationary period. And as heretofore noted, "conviction" is critical to impeachment by prior conviction of crime.

In order to be eligible for first offender treatment, there first must have been a verdict of guilty or a plea of guilty or of nolo contendere. Code Ann. § 27-2727. No case

has been found where a witness for the state was impeached, prior to sentencing, on the basis of his plea of guilty. However, in *Johnson v. State,* 48 Ga. 116 (3), the opinion indicates that the record of a plea of guilty would suffice for impeachment purposes, notwithstanding the fact that the witness may not have been sentenced.

Considering the merits of this question, where the testimony of a witness is sought to be impeached by conviction of a crime, the assumption is that such person may be untrustworthy as a witness and that the jury should be informed of this possible lack of trustworthiness in reaching their verdict. Such possible lack of trustworthiness is shown by a verdict of guilty, or plea of guilty, whether or not a formal conviction has been entered.

In balancing the rights of a first offender to be protected against having the stigma of a criminal record as opposed to the rights of a defendant in a criminal case to impeach the testimony of the witnesses against him, the latter prevails. The court below erred in excluding the first offender's record. Cf. People v. Mackey, 58 Cal. App. 123 (208 P 135).

4. Because it is not likely that the colloquy between court and counsel as to the description and loading of the pistol will be repeated upon a retrial, and because no objection was made to enable the trial judge to react, it is not necessary to decide whether the expression by the court contravened Code § 81-1104.

Similarly, the testimony volunteered by the defendant on cross examination that the person from whom he obtained the pistol "most likely . . . probably lifted it off somebody" need not recur upon retrial and therefore need not be ruled upon on this appeal.

5. At the request of the jury for recharge as to malice, the court recharged them as to murder, including malice. See Code Ann. § 26-1101 (a). The inclusion of instruction as to murder upon request for recharge as to malice was not error. In *Smith v. State,* 200 Ga. 188, 194 (36 SE2d 350), this court said that the then sections of our Code defining murder and those defining malice must be construed together. Moreover, where the jury requests recharge, the court may recharge them more fully than

requested. *Shouse v. State,* 231 Ga. 716, 720 (203 SE2d 537). Defendant's objection that the court should not have recharged the jury on murder is without merit.

The enumeration of error relating to the identification of a single juror is unsupported by citation of authority or argument. At that time, so far as appears from the record to that point, that juror may have been voting either for or against the final verdict. No motion for mistrial was made when that juror was allowed to state his own request for recharge. As has been stated numerous times, "A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict and complain later." *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221). No reversible error has been shown here except as this discussion may relate to the next enumeration of error.

6. Appellant enumerates as error the trial court's refusal to grant appellant's motion that the jury be polled after announcement of the verdict.

The right to a poll of the jury is a material right derived from the common law. *Wilson v. State,* 93 Ga. App. 375, 377 (91 SE2d 854). Upon such poll, each juror may be asked whether the verdict reached in the jury room is, after looking upon the accused, still his verdict. *Wilson,* supra (2); *Campbell & Jones v. Murray,* 62 Ga. 86 (7).

In criminal cases the right to poll the jury is not discretionary, and denial of that right when timely requested is reversible error. *Tilton v. State,* 52 Ga. 478; *Blankenship v. State,* 112 Ga. 402 (1) (37 SE 732); and *Brownlow v. State,* 112 Ga. 405 (4) (37 SE 733).

A demand to have the jury polled is not complied with by asking them collectively whether or not they have agreed to the verdict. *Blankenship,* supra; *Brownlow,* supra.

A request for poll is timely when made after the verdict is read. *Tilton,* supra; *Plummer v. State,* 229 Ga. 749 (194 SE2d 419). It is not timely made after the jury disperses (*Harrison v. State,* 100 Ga. 264 (28 SE 38)), or after sentence is passed (*Hammond v. State,* 166 Ga. 213 (1) (142 SE 895); *Webb v. State,* 166 Ga. 218 (1) (142 SE 898)).

The reason the passing of sentence cuts off the time

for polling the jury is that a juror may be affected by the announcement of the sentence. *Robinson v. State,* 109 Ga. 506 (8) (34 SE 1017).

In *McCullough v. State,* 10 Ga. App. 403 (7) (73 SE 546), the court, referring to the practice of asking whether there was any reason why sentence should not be imposed, held: "In a criminal case, where the evidence did not demand the verdict, and where the jury, after having been out considering the verdict for some hours, returned into court, and the foreman handed the verdict to the solicitor-general, who read it aloud, and immediately, upon the conclusion of the reading, the trial judge imposed the extreme penalty of the statute by announcing, 'twenty years in the penitentiary,' before the attorney for the accused had time to demand that the jury be polled, this conduct of the judge requires the grant of another trial."

The circumstances of this case (hours of deliberation by the jury, repeated requests for recharge as to malice, etc.) are sufficiently similar to *McCullough,* supra, to invoke its exception to the rule that a request to poll the jury is untimely when made after announcement of the sentence. The request for poll in this case was timely made.

7. There is a distinct difference in criminal cases (murder or involuntary manslaughter) where death is caused by a gun (*Stovall v. State,* 106 Ga. 443 (3) (32 SE 586)), and where death is caused by an automobile (*Park v. State,* 204 Ga. 766 (1) (51 SE2d 832)). Malice will be presumed from the use of a gun (*Stovall,* supra), except where the state's evidence shows mitigating circumstances, justification or alleviation (*Jordon v. State,* 232 Ga. 749 (5) (208 SE2d 840)). Cf. *Fisher v. State,* 228 Ga. 100 (184 SE2d 156); *McClendon v. State,* 231 Ga. 47 (2) (199 SE2d 904).

There was some evidence to sustain the jury's finding of malice and hence to support the finding that appellant was guilty of murder under paragraph (a) of Code Ann. § 26-1101. *Chandle v. State,* 230 Ga. 574 (1) (198 SE2d 289).

For the reasons stated in Divisions 3 and 6, above, the judgment must be reversed.

*Judgment reversed. All the Justices concur, except*

*Nichols, C. J., Undercofler, P. J., and Jordan, J., who dissent from Division 3 and from the judgment, and Undercofler, P. J., who dissents from Division 6.*

ARGUED JANUARY 21, 1975 — DECIDED APRIL 8, 1975.

*Greene, Smith & Tarver, John W. Hammond,* for appellant.

*George W. Darden, District Attorney, Richard L. Moore, Assistant District Attorney, Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr.,* for appellee.