## 57334. DOMINY v. MAYS et al.

McMURRAY, Presiding Judge.

This case involves the termination of the contract of a tenured public school teacher for the reasons authorized in Code Ann. § 32-2101c (a) (4, 8) (Ga. L. 1975, p. 360) of "immorality" and "other good and sufficient cause." Her contract was rescinded after a hearing which was affirmed on appeal to the State Board of Education and the superior court. She appeals. *Held:*

The board of education rested its case solely on documentary evidence showing the teacher's arrest, plea of guilty on the three counts of violating the Georgia Controlled Substances Act, and sentencing under the first offender provisions of Code Ann.§§ 27-2727 through 27-2732 (Ga. L. 1968, pp. 324, 325). This evidence was entered pursuant to a stipulation of the parties for the limited purpose of relieving the board of education of the burden of proving the facts underlying the criminal charge.

We note that prior to the hearing of the termination charges against this teacher the probation to which she had been sentenced due to the criminal charges against her had been terminated. On the other hand, to the extent that the teacher's plea of guilty admits possession of cocaine, glutethimide and marijuana, it remains and is not eradicated by the first offender treatment.

The possession of these drugs being proven, it is for the board of education as fact finders to determine whether the authorized inference of "immorality" is to be drawn from the proven facts. Compare *Johnson v. General Motors Corp.,* 144 Ga. App. 305 (241 SE2d 30); *Favors v. State,* 234 Ga. 80 (214 SE2d 645).

The proven fact of the teacher's possession of three dangerous drugs is evidence from which "immorality" may be inferred, even in the absence of criminal purpose or intent. The board of education is not required to disregard the common non-prescribed utilization of these drugs or to hypothesize some improbable innocuous explanation for the teacher's possession of them. The decision of the board of education and subsequent administrative bodies being supported by evidence, the

superior court did not err in affirming the decision of the board. *Ransum v. Chattooga County Bd. of Ed.,* 144 Ga. App. 783 (242 SE2d 374); *First Nat. Bank of Atlanta v. Langford,* 126 Ga. App. 325, 327 (1) (190 SE2d 803); *Balkcom v. Williams,* 220 Ga. 359 (138 SE2d 873).

*Judgment affirmed. Birdsong, J., concurs. Deen, C. J., concurs specially. Shulman, J., not participating.*

ARGUED MARCH 7, 1979 — DECIDED JUNE 5, 1979.

*Amy Totenberg,* for appellant.
*Smith, Cohen, Ringel, Kohler & Martin, Bruce H. Beerman, Warren C. Fortson,* for appellees.

DEEN, Chief Judge, concurring specially.

The appellant was arrested September 4, 1975, on drug charges, pleaded guilty on March 4, 1976, was placed on probation as a first offender, and was discharged on November 29, 1976. She was, at the time of her arrest, a public school teacher. In October, 1975, she was transferred from the school where she was teaching to another in the Atlanta area, apparently as a result of publicity following her arrest. She completed that year, was reemployed the following fall but shortly thereafter transferred to a third school, again as the result of adverse publicity. On October 5, 1976, she was relieved of her duties for the stated reason that her effectiveness as a teacher had been impaired. Proceedings were commenced for the termination of her contract under Chapter 32-21c of the Code, the exclusive grounds for which are as set out in Code § 32-2101c (a), and she was charged under subdivisions (4) and (8) with "immorality" and "other good and sufficient cause." On January 10, 1977, the teaching contract was rescinded.

The evidence at the hearing, which was affirmed on appeal by the State Board of Education and the Superior Court of Fulton County, is basically uncontradicted. It establishes that the defendant was the holder of a master's degree, was a tenured instructor, was highly thought of for her ability to work with the students; that she committed the offense of possessing marijuana and

cocaine (to which she pleaded guilty) during a period of despondency and overwork but did not at any time repeat the act and was pronounced completely recovered from the factors contributing to the incident of drug abuse. It was also established that no students were involved and that she had in classroom situations taken a firm position against drugs.

The only issue for decision is the effect of the first offender law (Code §§ 27-2727, 27-2732) upon these undisputed facts. Under Code § 27-2728 a discharge completely exonerates the defendant from any criminal purpose, his civil rights and civil liberties remain unaffected by the act, and he shall not be considered to have been convicted of a crime. To further spell out the meaning of this section, Ga. L. 1978, pp. 1621, 1622 (Code Ann. § 27-2728.1) provided that a discharge of the probationary sentence, which is effected without an adjudication of guilt, is not a conviction and may not be used as a reason for disqualifying the person from any public or private employment. This statute of course was not in effect at the time of the defendant's contract termination or at the time of the decision in *Johnson v. General Motors Corp.*, 144 Ga. App. 305 (241 SE2d 30) (1977), upon which the Board of Education relies. In *Johnson* the defendant, who in May, 1975, pleaded nolo contendere to a charge of receiving stolen goods was, while on probation under the First Offenders' Act, given a choice by his employer between resigning or being fired and chose the former. He later brought a suit for lost wages because of an alleged wrongful discharge. This court affirmed the grant of summary judgment to the employer because the first offender treatment "could not eradicate the facts of arrest and sentencing, and it could not erase their resignations," and also because the provisions of the First Offenders' Act were not invoked until some months after the resignations, which occurred prior to the termination of the probated sentence.

This appellant, a tenured teacher under contract and admittedly qualified and who had been discharged "without adjudication of guilt" in the first offender proceedings, could not have been legally terminated in her job unless the guilty plea entered in evidence by

consent was in and of itself evidence of immorality. The plea admitted that Ms. Dominy had cocaine and marijuana in her possession. She was not accused of intending to sell it, furnish it, or recommend its use to any other person. Therefore, the relevant question is, if what the defendant did was not with criminal intent and if no adjudication of guilt could be based upon it, was it still so inherently evil as to constitute immoral conduct? Since possession of drugs has through history been sanctioned in the absence of regulatory law it is somewhat difficult to answer this question. The key question in this case is, what is immorality? The distinction between moral and immoral becomes relative as it bears on the person drawing the line of demarcation. On one side is individualized absolutes and on the other individualized relativism, which are both synthesized in the middle and pronounced as community expressions of public morality that we must abide by. Fact finders are the proper forum to decide issues of obscenity and immorality. The school board in this instance should have the power to control its own body of interpretations as to immorality, and appellate courts sitting aloof in their ivory tower cannot substitute their judgment of morality for that of the fact finder if there is any competent evidence supporting the findings.

Appellant urges as evidence supporting her position writings of Dr. Peter G. Bourne, entitled "The Great Cocaine Myth." An attached informational paper apparently signed by Dr. Bourne points out beneficial uses of cocaine acting as surface anesthesia when rubbed on the penis prior to intercourse resulting in retarding the "ejaculation of the male thus extending the duration." The appellant's attorney states the alleged cocaine myth "had its genesis in a racial myth about the drug crazed black man."

Appellant's testimony was that she admitted possessing the drugs but that she did not advise her students to use drugs. "How do I know whether marijuana is really harmful to me or not?"[1] This is a type of

---

[1]Values Clarification, Sidney B. Simon, Leland W. Howe, Howard Kirschenbaum. New York: Hart Publishers, 1972.

designated thinking process presented to students in many schools under values clarification relativism. "The values actually chosen by the students are of no consequence."[2] Teachers are trained in *mental* health centers qualifying them as clinicians and Simon refers to the students as patients. ". . . Teachers must be alert to keep 'moralizing crap' out of their work with values."[3] The latter view is interpreted in educational circles as "unfreezing, changing and refreezing."[4] In effect it means Simon wants to strip students of absolutes learned at home and force and inject upon them his moralizing or immoralizing flap of relativism, that is, the student can decide on using drugs, sex, or survival games of who to kill techniques without any teacher's suggestion of any right or wrong answers. One example is Aldous Huxley, about whom it has been said, "He proposed drugs as a solution" to find truth inside our own heads and to find meaning in a world of non-reason.[5] He advocates to students use of "soma" drugs in Brave New World (1932), "use of drugs" in The Doors of Perception (1956), in Heaven and Hell (1956), and in the last chapter of The Humanist Frame (1961), and he extracted a promise from his wife to give him LSD when ready to die so that he could pass away in the midst of a trip. His first mentioned book is usually on the list of required reading in public schools. Appellant in this case, according to the evidence, advised the students "not to use drugs." This militates in her favor although it is contrary to Simon's teacher training and curriculum development methodology in use in many local systems.

---

[2]Values Clarification, supra.

[3]Doing Something About Values, Farnum Gray, distributed by National Humanistic Education Center, Upper Jay, N. Y.

[4]Issues in Training, Irving R. Weschler and Edgar H. Schein, Editors, Washington, D. C. : NTL Learning Sources Corp., Nat. Education Assoc., 1962.

[5]How Should We Then Live, Francis A. Schaeffer, Fleming H. Revell Co., Old Tappan, N. Y. Brave New World, by Aldous Huxley, is usually required reading in the 11th grade 20th Century English classes.

This writer concurs with the order of the State Board of Education dated July 29, 1977, expressing concern that the Atlanta Public School System did not promptly commence a procedure for contract termination after the guilty plea under the Georgia Controlled Substances Act for possession of cocaine, marijuana and glutethimide. It has been argued that the local system did not know of the guilty plea of March until September and that immediately thereafter they commenced proceedings to terminate the contract. No reference to any part of the record supporting this statement is made.

The hearing officer concluded: "The illegal use of drugs by school students is a major cause for concern throughout the country of parents, educators, and others . . . Although appellant was admittedly technically very competent, the knowledge in the community of her conduct was harmful to the school system and to her ability to effectively impart moral values to her students."

" 'A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds toward the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted' . . . If the fact be that she 'now commands neither the respect nor the goodwill of the community' and if the record shows that effect to be the result of her conduct within the clause quoted, it will be conclusive evidence of incompetency. It has always been the recognized duty of the teacher to conduct himself in such way as to command the respect and goodwill of the community, though one result of the choice of a teacher's vocation may be to deprive him of the same freedom of action enjoyed by persons in other vocations. Educators have always regarded the example set by the teacher as of great importance..." Beilan v. Bd. of Public Education, 357 U. S. 399 (78 SC 1317, 2 LE2d 1414). This ruling may have been narrowed by Keyishian v. Bd. of Regents, 385 U. S. 589 (87 SC 675, 17 LE2d 629, 637). See also Adler v. Bd. of Education, 342 U. S. 485, 493 (72 SC 380, 96 LE 517, 524) and Horosko v. School Dist. of Mt. Pleasant, 335 Pa. 369,

371, 374-375 (6 A2d 866, 868, 869-870).

Had the local system or Personnel Board seen fit to bring its charges against Ms. Dominy at the time of her arrest, indictment, plea, or conviction, this court would not hesitate in affirming her discharge, without equivocation, since it is immoral to disobey the law with criminal intent. The element of intent (purpose) in this case has been removed from the act by the action of the trial court, which makes for a more difficult decision. Aside from this one facet of the case, all the evidence speaks highly of her ability and dedication to her profession. Because the school board continued appellant's employment and made multiple assignments to different schools after knowledge of her arrest and entry of a guilty plea, a strong argument may be advanced that the board was estopped to terminate appellant's contract at this late stage. Yet, possession of three dangerous drugs is nevertheless evidence from which immorality may be inferred by the fact finder, and under the any evidence rule we must respectfully affirm.