28759. JONES v. THE STATE.

HALL, Justice.
This criminal appeal is solely concerned with the constitutional protection against double jeopardy, and

presents the question whether Jones was properly tried by a second jury for the offenses charged, following an earlier trial at which the court declared a mistrial over his objections after a jury had been impaneled and sworn but prior to the introduction of any evidence.

Jones was indicted for rape, aggravated assault, and two counts of armed robbery; he pled not guilty; on May 16, 1973, his case was called for trial. Following voir dire, twelve jurors were impaneled and sworn, and the court recessed for lunch. When court reconvened following the recess, prior to the introduction of any evidence the district attorney asked that the jury retire and that the courtroom be cleared except for the prosecuting witness and her husband. He then informed the court that it had come to his attention that one juror sworn, (hereinafter referred to as "Mr. B."), was a man with whom the prosecuting witness and her husband had had unfriendly contact concerning matters related to the prosecution of Jones. He summarized the facts of that encounter, and asked for the defense attorney's agreement to proceed with a jury of eleven persons. The defense attorney refused. The district attorney then moved for a mistrial on grounds that on voir dire Mr. B. had made a false answer in denying any acquaintance with the prosecuting witness or her family and that the state could not receive a fair trial with him on the jury.

The transcript of the voir dire shows that the panel as a whole, including Mr. B., were asked "is there anyone here acquainted with either of those ladies or any members of their family," identifying the prosecuting witness and another witness. The transcript notes that there was no response. On individual voir dire, Mr. B. was asked four questions, including "Do you know anything about this case?" The transcript reflects for all four answers "Reply inaudible."

In support of the mistrial motion the district attorney introduced testimony of the prosecuting witness' husband who testified that he and his wife had gone together to the B. home "and told Mr. B. and Mrs. B. the fact that on the [school] bus that day his son had made insulting remarks to my daughter in front of other students and these remarks were to the effect that he

heard that she and her mother had been raped and that — as to when they were to get an abortion. I asked Mr. B. to — if he could stop his son from making these remarks and that I thought he should know about what had occurred and that he should take some action to prevent it. The next morning — Mrs. B. asked whether it did occur and my wife remarked that that wasn't the point, that the point was such discussion shouldn't occur — . . . It was not a friendly conversation." (Name of Juror abbreviated by the court.) After further colloquy, and after the reporter's re-reading of the voir dire transcript, but without questioning Mr. B. further, the trial judge ruled that the termination of the trial was necessary because of Mr. B's false statement on voir dire which prevented a fair trial. The mistrial motion was granted.

Jones filed a plea of former jeopardy on May 29, and a hearing was held on the plea when the case was again called for trial on May 30th. The plea was denied. The case, however, was continued at the request of defendant whose material witness, though under subpoena, was absent. The trial was held in September, 1973, and the defendant was convicted of all charges, following the renewal of, and another denial of, his plea of former jeopardy.

Jones appeals on the single point of double jeopardy. We note at the outset that there is no doubt that jeopardy had attached prior to the mistrial. *Ferguson v. State,* 219 Ga. 33, 35 (131 SE2d 538). The question presented is the extent to which the court may enter a mistrial over defendant's objection and retry him at a later date even though jeopardy had attached prior to termination of the first trial. The state grounds its position in Code Ann. § 26-507 (e) (2) (d) which allows retrial following a former prosecution for the same offense if the former prosecution was terminated because "false statements of a juror on voir dire prevent a fair trial."

The double jeopardy provisions of our State and Federal Constitutions recognized the valued right of a criminally accused, once his jury has been sworn and impaneled and thus jeopardy has attached, to have his trial proceed to acquittal or conviction before that tribunal. E.g., *Nolan v. State,* 55 Ga. 521. Therefore, the

power of the trial judge to interrupt the proceedings on his own or the prosecutor's motion by declaring a mistrial is subject to stringent limitations. The double jeopardy clause operates with respect to a proposed retrial of the defendant by examining the entry of the mistrial under the test of United States v. Perez, 9 Wheat. (22 U. S.) 579, 580 (1824):

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious cases; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

The Perez requirement for "manifest necessity" to terminate the trial by mistrial over defendant's objection exists today. Illinois v. Somerville, 410 U. S. 458 (93 SC 1066, 35 LE2d 425). The test to be applied by the trial court hearing a double jeopardy plea is that retrial is permissible only if a manifest necessity existed for the declaration of the mistrial lest otherwise the end of public justice be defeated; the existence of "manifest necessity" is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances. United States v. Kin Ping Cheung, 485 F2d 689, 690 (5th Cir.), and cits. However, there are occasions upon which the defendant's right to have his trial completed by the particular tribunal must be

subordinated to the public's interest in securing a just judgment. Wade v. Hunter, 336 U. S. 684, 689 (69 SC 834, 93 LE 974); Whitfield v. Warden, 486 F2d 1118, 1121 (4th Cir.).

Concerning the action of the trial judge at Jones' trial, the question is presented whether prior to discharging the jury the judge erred in failing to examine the juror himself as to his possible disqualification, and if such disqualification was found, whether the judge should have investigated alternatives less drastic than mistrial in determining the existence of "manifest necessity."

On the question whether direct examination of the juror himself was required prior to determining his disqualification, the answer on these facts is no. Considering specifically a situation in which a juror was urged to have become disqualified through having accidentally overheard arguments on motions for acquittal of the defendants, the Fourth Circuit in Whitfield v. Warden, 486 F2d 1118, supra, wrote:

"The cases in which mistrials have been declared because of suspected juror bias support the conclusion that Whitfield's reliance on Jorn is misplaced. See e.g., Simmons v. United States, 142 U. S. 148 (12 SC 171, 35 LE 968) (1891); Thompson v. United States, 155 U. S. 271 (15 SC 73, 39 LE 146) (1894); United States v. Chase, 372 F2d 453 (4th Cir.), cert. denied, 387 U. S. 907 (87 SC 1688, 18 LE2d 626) (1967); United States v. Smith, 390 F2d 420 (4th Cir. 1968). In each of these cases, after the jury had been impaneled and sworn, the trial judge received information which rendered suspect the ability of one or more of the jurors to reach an impartial verdict. The exercise of the trial judge's discretion in declaring a mistrial was upheld, and reprosecution was permitted over objections based on the double jeopardy clause. Significantly, in each case, after the trial judge had ascertained that a juror has received an improper communication, the reviewing court did not require the judge to determine whether the communication had in fact prejudiced the juror. Discovery of the harmful communication in itself afforded grounds for mistrial. And in the recent case of Smith v. Mississippi, 478 F2d

88 (5th Cir. 1973), a mistrial was held not to bar reprosecution, even though the juror insisted that an improper conversation with a bailiff would not influence his judgment. It is with these precedential applications of the Perez standard in mind that we examine the ruling of the state trial judge." Id., p. 1122.

The Fourth Circuit concluded that questioning the juror was permissible but not necessary. This ruling is entirely in keeping with Wade v. Hunter, supra, in which the court wrote, "And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury *might* be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial." Id., p. 689. (Emphasis supplied.) This language was quoted approvingly in Illinois v. Somerville, 410 U. S. 458, supra, p. 470.

Additionally, "the federal authority now appears to clearly be that a trial judge over the defendant's objection may declare a mistrial because one of the jurors was 'acquainted with the defendant, and therefore probably prejudiced against the Government.' Such action by the trial judge is a proper exercise of 'power to prevent the defeat of the ends of justice'; therefore, a 'manifest necessity' existed. In such instance, 'the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public Justice.' " Stewart v. Commonwealth, 497 S. W. 2d 226, 228 (Ky. Ct. App. 1973).

*Roberts v. State,* 189 Ga. 36, 42 (5 SE2d 40), and similar cases, authorize the trial judge to inquire of the juror concerning his alleged disqualification; but those cases lay down no rule that such inquiry is required. Moreover, the case of *Brindle v. State,* 125 Ga. App. 298 (187 SE2d 310), cited by Jones, is inapposite because there the juror's family relationship to the accused could be waived under Georgia law, and the Court of Appeals found that waiver had occurred.

We find that the type contact which the prosecuting witness and her husband had with the juror here was so inherently explosive that the trial judge was authorized

to find that it disqualified the juror, even without questioning him. As Smith v. Mississippi, 478 F2d 88 (5th Cir.) teaches on analogous facts, a juror may be found disqualified even though he insists he is not biased; therefore, the juror's opinion of his qualification is by no means determinative, and the trial judge did not err in failing to question Mr. B.

Jones urges that upon finding Mr. B. disqualified, a less drastic alternative would have been substitution of another juror under Code § 59-809, and that the trial court's failure to do so constituted an abuse of discretion indicating that there was no "manifest necessity" and barring retrial. Jones seeks support from Downum v. United States, 372 U. S. 734 (83 SC 1033, 10 LE2d 100), and United States v. Jorn, 400 U. S. 470 (91 SC 547, 27 LE2d 543). Downum found that double jeopardy barred retrial where a mistrial was granted because of the absence of a government witness, and Jorn reached the same result where mistrial was declared because of the trial judge's belief that taxpayer-witnesses were not adequately warned of their right against self-incrimination. In both Downum and Jorn, but more specifically in the latter opinion, the Supreme Court gave weight in finding double jeopardy to the fact that the trial judge failed to utilize less drastic alternatives to the declaration of mistrial. However, subsequent to its decisions in Downum and Jorn the Supreme Court decided Illinois v. Somerville, 410 U. S. 458, supra, in which the trial court had granted a mistrial prior to any testimony upon realizing that under Illinois law the indictment was defective and could not be cured by amendment. Though the court in its discussion in Somerville continued to recognize the validity of some inquiry into alternatives, that decision must be read to hold that the mere existence of *some* alternative will not compel the conclusion that the declaration of mistrial by the trial judge was sufficiently precipitate to bar retrial. Specifically, the court rejected as a waste of time, energy, and money, the continuation of the trial, reversal on appeal (assuming conviction) and retrial of defendant. The court ruled that "Here, the trial judge's action was a rational determination designed to implement a

legitimate state policy [of proceeding only upon proper indictments], with no suggestion that the implementation of that policy in this manner could be manipulated so as to prejudice the defendant." P. 469. Downum was distinguished as involving an opportunity for the prosecution, following mistrial, to strengthen its case, id., an opportunity for prosecutorial abuse not present in Somerville and not present in Jones' case.

The fact that Somerville undercut the strength of the court's former inquiry into alternatives was specifically recognized in the dissenting opinion of Mr. Justice Marshall, 410 U. S. 477, which pointed out rather tenuous alternatives which that Justice felt the majority refused to consider. Justice Marshall also concluded that the majority had eviscerated Downum and Jorn, a reading of the majority opinion which has also been given by the Court of Appeals of Kentucky in the recent case of Stewart v. Commonwealth, 497 S. W. 2d 226, supra, which, like Jones' case, concerned possible juror bias discovered after swearing the jury:

"The Somerville decision reached by a clear majority of the Supreme Court, in which the Jorn case is reviewed, reveals to us that we were about to share the experience of the United States Court of Appeals for the Seventh Circuit in regarding Jorn and Downum v. United States, 372 U. S. 734 (83 SC 1033, 10 LE2d 100) (1963), as requiring a completely compelling showing of a 'no alternate' situation before a trial judge could abort a criminal trial over a defendant's objection, thereby removing the defendant's option to have his fate decided by the first jury selected. The Somerville majority opinion, however, apparently regards Jorn as deceptive in language when its peculiar facts are considered. In the course of the Somerville majority opinion, the following statement is made: 'In Simmons v. United States, 142 U. S. 148 (12 SC 171, 35 LE 968) (1891), a trial judge dismissed the jury, over defendant's objection, because one of the jurors had been acquainted with the defendant, and therefore was probably prejudiced against the Government; this court held that the trial judge properly exercised his power "to prevent the defeat of the ends of justice." '

"In the dissent of Mr. Justice Marshall in Somerville, he remarks that, in his view, 'manifest necessity' cannot be created by error on the part of the prosecutor or judge; it must arise from some source outside their control. He cites the Simmons case as an instance where a juror prevented the trial from proceeding to verdict. Thus, apparently, he read the holding of the Simmons case to the same effect as does the majority and to that extent concurs that in such instance the trial judge may sua sponte grant a mistrial and the defendant's subsequent plea of double jeopardy cannot prevail. Whether we agree with that construction of the Simmons case when read in the light of its peculiar facts is irrelevant." Id. p. 228.

The Kentucky court concluded that after Somerville, the no-other-alternative situation was not required to exist to justify a mistrial.

As was clearly pointed out in Whitfield v. Warden, supra, the persuasiveness of existing alternatives must vary with the fact thought to be reason for a mistrial: "the court's ruling with respect to alternatives to mistrial when a judge perceives that witnesses have not been adequately cautioned [the Jorn case] cannot be applied literally to the problem confronting a trial judge who fears that a juror has been exposed to improper influences." 486 F2d 1122. The court continued, considering defendant Whitfield's contention that an alternate juror should have been substituted: "Generally, declaration of a mistrial would be improvident if substitution of an alternate juror would permit the trial to proceed to a just verdict. *But no inflexible rule prohibits mistrial regardless of the circumstances attending the substitution of the alternate.*" Id. p. 1123. (Emphasis supplied.) Similarly, we note that no inflexible rule is set forth in Code § 59-809, which Jones urges as authority for selecting another juror. This statute is permissive only.

It is instructive that in allowing retrial against a double jeopardy claim in Smith v. Mississippi, supra, on closely analogous facts involving alleged bias on the part of a juror after the panel was sworn but prior to the taking of any evidence, the Fifth Circuit approved the

declaration of a mistrial with no discussion whatever of less drastic possibilities, concluding merely that the trial court's ordering a mistrial was not "unreasonable."

Consideration of the foregoing authority leads us to the conclusion that where the possibility of prosecutorial abuse exists, as in Downum and Jorn, the examination of alternative actions short of mistrial is properly more stringent than in situations such as that present here, wherein, through the fault neither of the state nor of the defendant, it is belatedly discovered that one member of the jury panel may well be unable to perform his duty to consider the case impartially. Such a possibility of juror bias, particularly where, as here, the juror has spent some time in the company of other members of the panel outside the courtroom, is sufficiently detrimental to the impartiality of the fact-finding process to warrant the declaration of a mistrial rather than the less extensive remedy of substituting another juror. This undermining of the impartiality of one and possibly more members of the fact-finding tribunal was sufficient to authorize the trial judge's conclusion under Code Ann. § 26-507 (e) (2) (d) that "a fair trial" had been prevented, and that it had been prevented by the "false statement" of the juror on voir dire that he had no acquaintance with the prosecuting witness or any member of her family, this "false statement" being the silence of Mr. B. when he was called upon to acknowledge such acquaintance if it existed. As we have applied it here, Code Ann. § 26-507 (e) (2) (d) comports with the dimensions of the double jeopardy clause of the Federal and State Constitutions, and allows Jones' retrial. We note additionally that Jones was offered a second trial only 14 days after the mistrial, and this case presents a situation in which a retrial imposes upon the defendant a minimum of harassment and unfairness. See Howard v. United States, 372 F2d 294 (9th Cir.).

Accordingly, the court below properly overruled Jones' plea of former jeopardy and, upon the rendition of a verdict of guilt upon retrial, was authorized to convict and sentence him.

*Judgment affirmed. All the Justices concur.*

ARGUED APRIL 8, 1974 — DECIDED MAY 28, 1974.

*Nicholson, Fleming & Blanchard, John M. Fleming, B. H. Barton,* for appellant.

*Richard E. Allen, District Attorney, Arthur K. Bolton, Attorney General, Thomas P. Burke, Deputy Assistant Attorney General,* for appellee.