S92P0666. LIVELY v. THE STATE.
(421 SE2d 528)

BELL, Presiding Justice.

John James Lively, Jr., was convicted in Wilkes County on two counts of murder and one count of aggravated assault in connection with the shooting deaths of Sarah Jane Paschall (Lively's former companion) and her sister, Melanie Paschall Land. Lively was sentenced to death on each of the two murder counts.[1] He now appeals, contending, inter alia, that the trial court erred by refusing to grant a defense motion to excuse for cause a prospective juror who was listed as a state's witness.

1. At the outset of the voir dire, the district attorney stated to the court that he would not call this juror as a witness in his case-in-chief, but reserved the right to call him in rebuttal or at the sentencing phase.

The juror knew one of the shooting victims; he was her employer. He also knew her parents. He had discussed with the deceased her

---

[1] The crime occurred on February 1, 1988. The defendant was arrested the same day. The case was tried November 12 through 17, 1990. A motion for new trial was timely filed. The motion was denied on January 8, 1992. The case was docketed in this court on March 9, 1992. After extensions of time were granted to both parties, the case was argued orally on June 30, 1992.

"on-again/off-again" relationship with Lively and had given her "fatherly advice" concerning that relationship, including matters that might be "brought out" at trial. He had also met and talked to Lively and "casually" discussed his relationship with the deceased. After her death, he was asked to serve — and did serve — as the deceased's pall bearer. The juror testified he had expressed his "remorse" and "sorrow" to the deceased's family and that it "was understood" that if there was anything he could do, they should not hesitate to ask.

The trial court refused to grant the defendant's motion to excuse the juror for cause based solely on the juror's testimony that, despite his close relationship with the deceased, he could be a fair and impartial juror. Thus, the defendant was forced to use a peremptory strike to remove the juror.

Lively contends that, because of the juror's close relationship with the victim and the victim's family, the juror could not have been truly impartial even if he sincerely believed he could be, and, moreover, that his "in-depth personal knowledge of the case" and his status as a potential witness for the state disqualified him in any event. We agree.

As we observed in *Jones v. State*, 232 Ga. 324, 330 (206 SE2d 481) (1974):

> [A] juror may be found disqualified even though he insists he
> is not biased; therefore, the juror's opinion of his qualification is by no means determinative. . . .

When ruling on a potential juror's qualifications, the trial court must make a factual determination based on all the circumstances known to the court, including, but not limited to, the juror's own opinion of his impartiality. The record as a whole fails to support the court's finding that the juror could put aside his close relationship with the deceased and his personal knowledge of her difficulties with the defendant and render an impartial verdict based solely on the evidence presented at trial.

In addition, we agree with the defendant that while ancient Georgia law countenances witnesses serving as jurors, see, e.g., *Savannah, Fla. & Western R. Co. v. Quo*, 103 Ga. 125, 127 (29 SE 607) (1897) and cits., such practice "conflicts with current Georgia law" prohibiting contacts between jurors and witnesses, see, e.g., *Castro v. State*, 186 Ga. App. 248 (2) (367 SE2d 42) (1988) and cits., requiring the mandatory sequestration of witnesses on request, OCGA § 24-9-61, requiring the mandatory sequestration of jurors in death penalty cases, OCGA § 15-12-142, and prohibiting jury questioning of witnesses. *State v. Williamson*, 247 Ga. 685 (279 SE2d 203) (1981). In the future, jurors known by the parties to be prospective witnesses

about matters material to the case should be excused for cause on proper motion.[2]

2. The defendant is entitled to a panel of 42 qualified jurors. *Harris v. State*, 255 Ga. 464, 465 (339 SE2d 712) (1986). The trial court's failure to excuse the juror at issue above denied Lively a full panel of qualified jurors. We must reverse.

3. Because the evidence meets the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the case may be retried.

*Judgment reversed. Clarke, C. J., Bell, P. J., Hunt, Benham and Sears-Collins, JJ., concur; Fletcher, J., concurs in the judgment only.*

DECIDED OCTOBER 16, 1992 —
RECONSIDERATION DENIED NOVEMBER 6, 1992.

*Walton Hardin, Larry L. Duttweiler, Brian Mendelsohn,* for appellant.

*Dennis C. Sanders, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, C. A. Benjamin Woolf, Staff Attorney,* for appellee.

---

[2] A party, of course, could not disqualify a prospective juror simply by adding a juror with little or no first-hand knowledge of the case to a party's list of witnesses. Moreover, we do not question here cases such as *Jones v. State*, 201 Ga. App. 102 (1) (410 SE2d 199) (1991), in which an alternate juror who realized after the trial began that he had important knowledge about the case was allowed to testify as a witness *after* being excused as a juror (and after the trial court determined that the juror had not communicated his knowledge to the other jurors).