## S97A0943. CARSWELL v. THE STATE.

(491 SE2d 343)

SEARS, Justice.

Appellant Randy Carswell appeals from his conviction and life sentence for malice murder. While we find that the trial court abused its discretion by refusing to allow Carswell to play a videotaped statement he made to police during his cross-examination of the State's chief investigator, we also find that Carswell suffered no harm as a result. Because we reject Carswell's other enumerations as meritless, we affirm.

Late one night, appellant Carswell and several others met with the victim Daniels, a drug dealer. At that time, Daniels showed Carswell approximately $1,700 in cash that Daniels had in his possession. Early the next morning, two witnesses saw Carswell walking along a road. At the point where Carswell was seen, there was only one home in the direction he was walking — Daniels'. Later that same morning, Daniels was found dead in his bedroom. He had been stabbed repeatedly in the neck and shoulder.

Carswell initially told investigators that he had been at his own home on the morning of the killing. He then voluntarily went to the police station for further questioning. Carswell was videotaped during this interview, and was arrested after five minutes for making false statements to a police officer. He was informed of his *Miranda* rights, stated that he understood those rights, signed a waiver of rights form, and did not ask for an attorney. Carswell then admitted to having previously bought drugs from Daniels, but denied involvement in the killing. He indicated that he knew who the murderer was, and would contact the investigator if he decided to reveal the killer's identity.

Three hours later, Carswell asked to speak with the investigator again, and made a second videotaped statement. A third videotaped statement was made several days later. Before each statement, Carswell was informed of his *Miranda* rights. In his second and third statements, Carswell admitted having gone to Daniels' home on the morning in question, and arguing with Daniels. Carswell then admitted to having stabbed Daniels in the neck, chasing him down the hallway to the bedroom, and slashing his throat as he lay on the floor.

After looking unsuccessfully for money, Carswell left Daniels' home, and threw the knife into a nearby field. He then went to his home, burned the clothing he was wearing, and bathed. At trial, Carswell admitted being on the road to Daniels' house on the morning of the killing, but claimed that he never reached Daniels' house.[1]

1. The evidence introduced at trial, construed most favorably to the verdict, was sufficient to enable a rational trier of fact to find Carswell guilty of malice murder.[2] Nonetheless, Carswell claims that there was insufficient evidence to corroborate his confessions. Of course, an uncorroborated confession, standing alone, cannot support a conviction.[3] However, a confession, freely and voluntarily made, is evidence of the highest character, and any corroboration thereof will be sufficient to sustain a conviction.[4] In this case, Carswell's confessions were supported by the following corroborating evidence: (1) Independent witnesses saw Carswell within approximately one-half mile of the victim's home shortly before the murder, and the only home in the direction that Carswell was walking was the victim's; (2) The victim was killed in the same manner that Carswell described in his confessions; and (3) The evidence showed that a struggle and pursuit occurred between the killer and his victim, in the same manner as described by Carswell in his confessions. Thus, Carswell's confessions were supported by independent corroborating evidence, and this enumeration is rejected.

2. Carswell claims that because his confessions were prompted by the promise of a benefit and coercion, the trial court erred by admitting the two videotaped confessions.[5] While being interrogated, Carswell was told that he could be prosecuted for the death penalty, and that his cooperation would be communicated to the trial court, as would any failure to cooperate. Investigators also told Carswell that they could not recommend a sentence to the trial court, and could not guarantee that if he cooperated, he would receive a lenient sentence.

---

[1] The murder took place on May 26, 1995, and Carswell was indicted on July 28, 1995, for malice and felony murder, with the purchase of cocaine underlying the latter charge. The trial was held on April 8-12, 1996. Carswell was found guilty of malice murder on April 12, 1996, and an order of nolle prosequi was entered on the charge of felony murder. He was sentenced to life imprisonment. A timely motion for new trial was filed on May 9, 1996, amended on November 11, 1996, and denied on January 24, 1997. Carswell timely filed his notice of appeal on February 22, 1997. The transcript was certified by the court reporter on February 27, 1997, the appeal was docketed with this Court on March 19, 1997, and the matter was orally argued before the court on July 7, 1997.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We also reject Carswell's claim that the trial court erred in denying his new trial motion, because his conviction was decidedly against the weight of the evidence. Id.

[3] OCGA § 24-3-53.

[4] *Sands v. State*, 262 Ga. 367 (418 SE2d 55) (1992).

[5] See OCGA § 24-3-50.

Agreeing to tell the trial court of a defendant's cooperation during interrogation does not constitute the hope of a benefit that will render an admission inadmissible.[6] Furthermore, having reviewed the videotaped statements, we are confident that investigators did not threaten Carswell with personal harm by telling him that he could be prosecuted for the death penalty, but rather simply stated the potential legal consequences of Carswell's actions.

We also reject Carswell's claim that investigators exercised undue influence over him when they suggested that he would be better off remaining in police custody after making his first statement, because members of the community had threatened harm against the murderer. As acknowledged by Carswell during interrogation, before being taken into custody, he had been threatened with vigilante justice. Thus, it appears the investigators may have offered him needed protection.

Carswell also claims that his confessions should have been suppressed because during his interrogation, the chief investigator told him that they were speaking "off the record," when in fact they were being surreptitiously videotaped. The videotape shows that, at one point near the conclusion of the first interview, the chief investigator said they were speaking off the record, and then asked Carswell if he had committed the murder. Carswell responded that he did not. It was not until more than three hours later, after Carswell had initiated the second interview, that he confessed. Before the second interview commenced, Carswell was reminded of his *Miranda* rights. At that point, Carswell could not reasonably have expected that his interrogation was being conducted off the record.[7] Thus, Carswell's confessions were quite remote from, and not prompted by, the investigator's claim that they were speaking off the record, and this enumeration is rejected.[8]

Finally, we conclude that Carswell's statements were not subject to suppression merely because he was not informed that his interrogation by law enforcement personnel was being recorded. As a general matter, we do not believe there can be a reasonable subjective expectation of privacy associated with a suspect's statements made during an interrogation session held in a police station.[9] In this case, excepting the one brief segment of the first interrogation where the

---

[6] *Butler v. State*, 194 Ga. App. 208 (390 SE2d 278) (1990).

[7] See *Burgeson v. State*, 267 Ga. 102, 106-107 (475 SE2d 580) (1996) (authorizing introduction of statement recorded in the back seat of police patrol car following arrest where no reasonable expectation of privacy existed); see also *Quaid v. State*, 132 Ga. App. 478, 490 (208 SE2d 336) (1974).

[8] We need not, and do not, consider whether a confession made in direct response to an untrue assertion that a suspect is speaking off the record is admissible.

[9] See *Burgeson*, supra.

investigator stated that they were speaking off the record, nothing associated with Carswell's interrogation did anything to foster a reasonable expectation that his conversation with law enforcement personnel was private in any regard.[10]

For all of these reasons, and after considering the totality of the circumstances surrounding Carswell's interrogation,[11] we conclude that it was not error to admit the two videotaped confessions.

3. It was not error to admit the State's photographic exhibit of the victim posing with his wife.[12] The photograph was admitted for a proper purpose, as it was referred to by two State's witnesses when identifying the victim.[13]

4. Carswell claims that the trial court erred by admitting photographs of the crime scene that were likely to inflame the juror's passions. After Carswell objected to the State's initial proffer of these photographs, counsel conferred together as to which of the photos were objectionable. Seven of the photos originally tendered were withdrawn, and the remaining photos were submitted. Defense counsel then stated on the record that there was no objection to the photos' admission. Thus, this enumeration was waived.[14]

5. Carswell claims that the trial court abused its discretion when it prevented him from thoroughly cross-examining the chief investigator. During presentation of the State's case-in-chief, the jury viewed Carswell's second and third videotaped statements in conjunction with the chief investigator's testimony that Carswell's confessions were voluntary. During Carswell's cross-examination of the investigator, the trial court refused to allow Carswell to play the videotape of his first statement, in which he denied committing the murder.[15] However, Carswell was allowed to play the first videotaped interview, and he called the chief investigator to testify, during the presentation of his defense.

"Cross-examination of a witness is a matter of right,"[16] guaranteed under the Sixth Amendment to the United States Constitution.[17] Among the permissible purposes of cross-examination is the

---

[10] Id.

[11] See *Haynes v. Washington*, 373 U. S. 503, 513 (83 SC 1336, 10 LE2d 513) (1963).

[12] See *Norton v. State*, 263 Ga. 448, 450 (435 SE2d 30) (1993).

[13] See *Simon v. State*, 253 Ga. 681, 682 (324 SE2d 455) (1985); *Sizemore v. State*, 251 Ga. 867, 868 (310 SE2d 227) (1984).

[14] *Herrin v. State*, 230 Ga. 476, 477 (197 SE2d 734) (1973).

[15] Our case law allows a criminal defendant to attempt to impeach a State's witness by playing a tape-recorded statement touching upon that witness's testimony. See *Kinnebrew v. State*, 267 Ga. 400, 403 (480 SE2d 1) (1996).

[16] *Alford v. United States*, 282 U. S. 687, 691 (51 SC 218, 75 LE 624) (1931). See OCGA § 24-9-64 (every party has the statutory right to conduct a thorough and sifting cross-examination of each witness called against him).

[17] *Davis v. Alaska*, 415 U. S. 308, 315 (94 SC 1105, 39 LE2d 347) (1974).

attempt to bring out facts that might show that a witness's testimony is either unbelievable, biased, or partial to one party.[18] As a general matter, the scope of substantive, meaningful cross-examination lies within the discretion of the trial court.[19] However, the potential bias or partiality of a witness may always be explored on cross-examination, as may matters that touch upon the witness's own testimony, and the right to a thorough and sifting cross-examination on these subjects should not be abridged.[20]

In this case, the chief investigator, a law enforcement officer working for the State, testified as to the voluntariness of Carswell's confession, and the jury viewed those portions of the second and third videotapes in which Carswell confessed and stated that he did so voluntarily. Thus, the defense was permitted to thoroughly cross-examine the investigator concerning the circumstances surrounding the making of the confessions, and to attempt to show potential biases or partiality that might have affected the investigator's testimony. Furthermore, the defense was permitted to cross-examine on the voluntariness of the confession, and the foundation of Carswell's claim that his confession was coerced is contained almost exclusively in the first videotape. By refusing to allow defense counsel to play the first videotaped statement, which was made immediately before the confessions, the trial court effectively " 'cut off *in limine* all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion . . . .' "[21]

However, it does not follow that reversal is required. Our review of the record shows that defense counsel was permitted to question the chief investigator thoroughly about the first videotaped interrogation. That fact, considered in light of our ruling in Division 2 that Carswell's confessions were voluntary, and the overwhelming evidence of Carswell's guilt, lead us to conclude that the trial court's discretionary abuse did not contribute to the verdict, and therefore it was harmless.[22]

6. Carswell's contention that it was error to charge the jury that the attempted purchase of cocaine may underlie a felony murder conviction is moot. Carswell was found guilty of malice, not felony, murder.

7. It was not error to charge the jury on voluntary manslaughter, as the charge was supported by the evidence.[23] Nor did the trial court

---

[18] *Alford*, supra; *Davis*, supra; *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982).

[19] *Givens v. State*, 264 Ga. 522, 523 (448 SE2d 687) (1994).

[20] See *Davis*, supra; *Hines*, supra.

[21] *Hines*, supra (quoting *Alford*, supra).

[22] *Castell v. State*, 250 Ga. 776, 789 (301 SE2d 234) (1983); *Mathis v. State*, 231 Ga. 401, 403 (202 SE2d 73) (1973).

[23] See OCGA § 16-5-2 (a); *Henderson v. State*, 234 Ga. 827, 831-832 (218 SE2d 612) (1975).

err in refusing to give Carswell's requested charge on premeditation, as it is not an element of malice or felony murder.[24]

8. There was no fatal variance in the allegations and the proof. Carswell was indicted for felony murder with the underlying felony being the purchase of cocaine. The trial court charged the jury on the *attempted* purchase of cocaine as the underlying felony. The indictment's allegations were entirely sufficient to give Carswell notice of the charge against him, and to enable him to adequately prepare his defense.[25]

9. The trial court did not err when it recharged the jury on felony and malice murder, without repeating other charges that were not requested by the jury.[26]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 6, 1997 —
RECONSIDERATION DENIED OCTOBER 31, 1997.

*Lovett Bennett, Jr.,* for appellant.

*Richard A. Malone, District Attorney, Lance J. Hamilton, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.

---

[24] *Wright v. State,* 255 Ga. 109, 111 (335 SE2d 857) (1985).

[25] *State v. Eubanks,* 239 Ga. 483, 484 (238 SE2d 38) (1977).

[26] *Sinkfield v. State,* 266 Ga. 726, 727 (470 SE2d 649) (1996).