## S97A0945. MATTHEWS v. THE STATE.
### (493 SE2d 136)

THOMPSON, Justice.

Joe Lorenzo Matthews was convicted of the felony murder of a convenience store clerk, Avalon Earls, and the armed robbery of the store owner, Thelma Johnson.[1] Finding no reversible error, we affirm.

Matthews approached the counter of Johnson's General Store in Stillmore, Georgia, with a B-B gun in hand and confronted Johnson, the owner/manager. When Johnson removed a pistol from her pocket, Matthews jumped behind the counter, struck Johnson in the head, and gained possession of her gun. Matthews demanded that Johnson open the cash register. As Matthews gathered the contents of the cash drawer, Johnson fled through the front door. Matthews ran to

---

[1] The crimes occurred on January 5, 1996. Matthews was indicted on February 2, 1996, and charged with the malice murder and felony murder of Earls, and the armed robbery of Johnson. Trial commenced on August 5, 1996, and on August 7, 1996, Matthews was found guilty of felony murder and armed robbery. Matthews was sentenced on August 9, 1996, to life imprisonment for felony murder and to a consecutive sentence of 20 years for armed robbery. A motion for new trial was filed on September 6, 1996, and amended on November 12, 1996. The motion was denied on January 27, 1997. A notice of appeal was filed on February 24, 1997. The case was docketed in this Court on March 19, 1997, and was orally argued on July 7, 1997.

the back door, where he encountered the clerk, Avalon Earls. Matthews testified he did not intend to shoot Earls, but as he was fleeing, the momentum of his arm caused Johnson's gun to discharge and Earls was shot and killed. Matthews then shot the lock off the back door and fled.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find Matthews guilty beyond a reasonable doubt of the felony murder of Earls with the underlying felony of armed robbery, and the armed robbery of Johnson.

2. Matthews asserts that the court erred in failing to strike two jurors for cause based on their familiarity with the defendant and the victims.

The first juror stated during voir dire that the children of the victim frequented a convenience store which she owned, and that she had heard "a lot of information" about the incident. She had previously been a teacher's aide and recalled that the victim's children had attended the school where she worked. When questioned by the prosecutor, she stated that she could be impartial, even though she knew the children of the deceased. She also acknowledged that she had not formed or expressed an opinion about the case, and that she could set aside what she had heard to render a fair and impartial verdict.

The second juror stated that she and her family had been close friends with the Earls family, and that Earls' youngest son and her son had grown up together. Initially she stated, "I don't know if I could be fair in this case," and when questioned further by defense counsel, she stated she might feel uncomfortable sitting on the jury, but she believed that she could be fair and impartial and that she did not harbor any prejudice or bias against Matthews.

Matthews cites *Lively v. State*, 262 Ga. 510 (1) (421 SE2d 528) (1992) and *Jones v. State*, 232 Ga. 324 (206 SE2d 481) (1974), for the proposition that the juror's own opinion of her impartiality is not determinative, but that the court must look to all circumstances in assessing a juror's qualifications. In *Jones*, supra at 330, we observed that "a juror may be found disqualified even though he insists he is not biased; therefore, the juror's opinion of his disqualification is by no means determinative." We explained further in *Lively*, supra at 511, that the court must make a factual determination as to disqualification based on "all the circumstances known to the court, including, but not limited to, the juror's own opinion of his impartiality." In *Lively*, the juror was the employer of the victim, and was her confidant and advisor, offering her " 'fatherly advice' " concerning her erratic relationship with the defendant. They had also discussed matters that might be brought out at trial. In addition, the juror had discussions with the defendant concerning his relationship with the

victim. After the victim's death, the juror served as her pallbearer and expressed sympathy to her family. Because of that extremely close relationship between the juror, the victim, and her family, we determined that the record as a whole failed to support the trial court's finding (based solely on the juror's statement that he could be impartial) that the juror could put aside his personal feelings, consider only the evidence, and render an impartial verdict.

In *Garland v. State*, 263 Ga. 495 (1) (435 SE2d 431) (1993), we clarified that the factual determination required in *Lively* need only be made

> where the record shows on its face circumstances indicating that a potential juror has a *compelling interest or bias* in the case. In this situation, the record must show more than the potential juror's own statement that he can render a decision based on the evidence in order to support a trial court's denial of a motion to strike this juror for cause.

(Emphasis supplied.) *Garland,* supra at 497. As in *Garland,* the record in the present case fails to show that either juror had such a "compelling bias or interest in the outcome of the case," id., as would require a further factual determination under *Lively.* Neither juror "held opinions or biases which were so fixed that they could not be set aside to decide the case on the evidence." *Wellons v. State*, 266 Ga. 77, 84 (6) (a) (463 SE2d 868) (1995). The court did not abuse its discretion in failing to remove the jurors for cause.

3. Matthews challenges a series of evidentiary rulings.

(a) At a hearing outside the presence of the jury, the State established that Matthews was read his *Miranda* rights, acknowledged that he understood them, and elected to waive his rights and give a statement. Matthews asserts that the statement was rendered involuntary solely by virtue of the fact that he was not informed the interview was being recorded on videotape. In light of a valid *Miranda* waiver, recordation of the interview without informing the defendant did not automatically render the statement involuntary and inadmissible. See generally *Carswell v. State*, 268 Ga. 531 (491 SE2d 343) (1997). Additionally, even though the officer did not tell Matthews that he was being videotaped, the camera was visible and was situated on a shelf about five feet away. The trial court correctly allowed the videotape of that statement to be played to the jury.

(b) The court did not abuse its discretion in admitting a photograph of the deceased victim taken at the scene. The photograph, taken at a distance of 15 feet, was not unduly gruesome or inflammatory as to be prejudicial. Moreover, it was "relevant and material to the identity of the victim, the location of the victim's body, the loca-

tion of certain physical evidence at the scene, and the location and nature of the victim's wounds." *Smith v. State*, 258 Ga. 179, 180 (2) (366 SE2d 687) (1988). See also *Williams v. State*, 266 Ga. 882 (2) (471 SE2d 888) (1996).

(c) Nor did the court abuse its discretion in allowing a forensic pathologist to state an opinion as to the distance between the gun and the victim and the angle of trajectory of the bullet which entered his body. The witness explained that forensic pathologists study "terminal ballistics . . . what the missile did to the body." They also study the angle or trajectory of the bullet as it enters the body and the path it follows, as well as the relationship of the muzzle of the gun to the point of impact on the body. Since an expert can be qualified to·testify based on special knowledge derived from experience or study, *Taylor v. State*, 261 Ga. 287 (3) (404 SE2d 255) (1991), the court had sufficient information to find the witness qualified to testify on the location of the gun and trajectory of the bullet.

4. Matthews contends that the court erred in permitting the prosecutor to impeach defense witness Dennis Matthews with his first offender record.

During cross-examination, the prosecutor inquired, "[A]re you the same Dennis Matthews who pled guilty to the offense of theft by receiving stolen property?" The witness responded in the affirmative. The prosecutor then sought to introduce the record of the plea. Upon inspection of the document by defense counsel, it was noted that the plea had been accepted under the first offender statute, OCGA § 42-8-60 et seq., and that the witness had been discharged without an adjudication of guilt. Counsel objected to the evidence on that basis, moved to strike the testimony, and also sought a mistrial. The motions were denied and the document was admitted into evidence.

OCGA § 42-8-62 (a) expressly provides that completion of first offender probation "completely exonerate[s] the defendant of any criminal purpose and shall not affect any of his civil rights or liberties; and the defendant shall not be considered to have a criminal conviction." In *Witcher v. Pender*, 260 Ga. 248 (392 SE2d 6) (1990), we held that the first offender record of an adverse witness in a *civil* case is inadmissible for impeachment purposes to show that the witness had been convicted of a felony or a crime of moral turpitude. We acknowledged that a witness may be impeached by evidence of a *conviction* of a felony or a crime involving moral turpitude. OCGA § 24-9-84. However, we made the distinction between a criminal conviction and the successful completion of probation following a guilty plea under the first offender statute, OCGA § 42-8-62. Under the latter, there is no adjudication of guilt and the defendant is protected against the stigma of a criminal record. Our rationale was predicated on the clear legislative expression in the first offender statute, i.e., to

exclude the use of a first offender record for the purpose of impeachment since successful completion of first offender probation provides complete rehabilitation without the stigma of a criminal conviction.

In the present case, as in *Witcher*, the witness was questioned about the crime for which he received first offender treatment, and the first offender record was introduced to impeach the witness by showing that he committed a crime involving moral turpitude — it was not offered to disprove or contradict his testimony. We conclude that the first offender record of the defense witness was improperly admitted for the purpose of showing that his testimony was not worthy of belief because he had committed a crime involving moral turpitude. Accordingly, we extend the ruling in *Witcher* to apply both in civil and criminal cases. We hold that unless there is an adjudication of guilt, a witness may not be impeached on general credibility grounds by evidence of a first offender record.[2]

We recognize that this new rule creates an inconsistency with our holding in *Favors v. State*, 234 Ga. 80, 86 (3) (214 SE2d 645) (1975), that allows impeachment of a State's witness by evidence of a first offender plea. In that case, we created an exception to the general rule authorizing impeachment only for the conviction of a crime involving moral turpitude. The holding in *Favors* tracks the rationale of *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974), that the interest in protecting the rights of a witness is outweighed by a criminal defendant's Sixth Amendment interest in cross-examining adverse witnesses. See id., 415 U. S. at 319 (3).[3] Thus, implicit in *Favors* are the constitutional underpinnings of the confrontation clause of the Sixth Amendment of the U. S. Constitution and Art. I, Sec. I, Par. XIV of the Georgia Constitution (1983).

But the *Favors* decision drew no distinction between impeachment for constitutionally-protected reasons, e.g., to show bias, motive or to contradict testimony, and impeachment for reasons that do not involve confrontation clause considerations, e.g., to show a general lack of trustworthiness based on a prior criminal conviction. The type of impeachment cross-examination authorized in *Favors* is not guaranteed by the confrontation clause. See, e.g., *State v. Cosby*, 504 A2d 1071, 1073 (Conn. App. 1986) (constitutional right of confrontation

---

[2] We do not decide whether a first offender record may be used for purposes of impeachment to disprove or contradict the testimony of the witness. See, e.g., *Hightower v. Gen. Motors Corp.*, 255 Ga. 349 (338 SE2d 426) (1986) (first offender record admissible against a witness in a civil case to disprove or contradict facts testified to by him).

[3] The *Davis* Court recognized that "the right of confrontation is paramount to the State's policy of protecting a juvenile offender," and that "[w]hatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record . . . is outweighed by [Davis'] right to probe into the influence of possible bias" in the witness' testimony. Id., 415 U. S. at 319.

embraces cross-examination for bias, interest or motive, but use of prior convictions to impeach general credibility is subject only to the rules of judicial discretion). Accordingly, this Court in *Favors* erred when it held that a criminal defendant's right to impeach a witness on grounds not constitutionally protected is paramount to the State's legislative intent in protecting persons who successfully complete first offender probation from the stigma of a criminal record. Because we improperly allowed use of a first offender record for impeachment by prior conviction of a crime, *Favors*, supra; *Gilstrap v. State*, 250 Ga. 814 (2) (301 SE2d 277) (1983); and their progeny are overruled. For the same reasons, *Metheny v. State*, 206 Ga. App. 275 (2) (424 SE2d 857) (1992); *Miller v. State*, 162 Ga. App. 730 (4) (b) (292 SE2d 102) (1982); *Moon v. State*, 154 Ga. App. 312 (1) (268 SE2d 366) (1980); *Ware v. State*, 152 Ga. App. 199 (1) (262 SE2d 536) (1979), and any other authority which suggests a rule contrary to this decision, are also overruled.[4]

While the trial court's ruling in this regard was erroneous, it is fundamental that harm as well as error must be shown for reversal. *McIntyre v. State*, 266 Ga. 7 (9) (463 SE2d 476) (1995). The defense witness testified on direct examination that he routinely gave his pay checks to Matthews to cash. This testimony was offered to explain why Matthews had over $400 in cash and food stamps on his person when he was apprehended shortly after the murder/robbery. However, the store owner testified that the cash register contained about $800 at the time of the robbery, and that she observed Matthews begin to empty the cash drawer before she fled from the store. Approximately $400 in cash was found scattered on the floor when the police arrived. It follows that the money found in Matthews' possession consisted of the remainder of the contents of the cash register. Moreover, Matthews admitted on cross-examination that he robbed the convenience store. Given this overwhelming evidence against Matthews, it is highly probable that the error in allowing impeachment of his witness did not contribute to the jury's verdict of guilt. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

5. Any complaint about the failure to direct a verdict on malice murder and error in connection with the jury instruction on malice murder is rendered moot because Matthews was not found guilty of that offense.

6. Matthews submits that the prosecutor impermissibly commented on his failure to testify.

During cross-examination, Matthews was questioned by the

---

[4] See also *England v. State*, 214 Ga. App. 275 (447 SE2d 654) (1994), in which the issue was not properly preserved for review.

prosecutor concerning portions of his videotaped custodial statement, which contradicted earlier statements he made during an audio cassette taped interview. Matthews responded, "There are certain parts of that video, as you will hear, or as would have been heard if I would've not been coerced when that cassette tape was being made that would have completely contradicted some of the things that were on that video." Although Matthews testified to the contents of the cassette tape, he failed to produce it at trial. The prosecutor then inquired, "Q. That cassette tape. Would you like that cassette tape? Would you like to play that for the jury? Do you want to play that cassette tape to the jury, Mr. Matthews? A. That is not up to my discretion. That is what my attorney is for. Q. Oh. Okay, well then let ya'll decide, because here it is."

The prosecutor was not inviting Matthews to testify or commenting on his failure to testify; he was merely offering him use of the cassette tape to support his testimony. "Though the prosecutor may not comment on a *defendant's* failure to testify, it is not error, nor is it improper for the prosecutor to reflect upon the failure of the defense to present any evidence to rebut the proof adduced by the state." (Citations and punctuation omitted.) *Smith v. State*, 245 Ga. 205, 207 (4) (264 SE2d 15) (1980).

7. Matthews submits that the court erred in giving certain jury instructions and in refusing to give certain requested charges.

(a) A charge on simple robbery was not authorized. Even if the robbery victim succeeded in escaping from the store before the money was taken from the cash register, the "immediate presence" requirement of OCGA § 16-8-41 (a) was satisfied. An armed robbery may be committed "even out of the physical presence of the victim if what was taken was under [the victim's] control or . . . responsibility and if [the victim] was not too far distant." *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975).

(b) Citing *Edge v. State*, 261 Ga. 865 (2) (414 SE2d 463) (1992), Matthews asserts the court gave an improper sequential charge. Since the jury was not authorized to consider the option of voluntary manslaughter and no such charge was given, *Edge* is not implicated. Also, the problem in *Edge* "does not exist if the underlying felony is independent of the killing itself, such as burglary, robbery, or even an assault that is directed against someone other than the homicide victim." *Edge*, supra at 867, n. 3. In the present case, the underlying felony of the armed robbery of Johnson was independent of the killing of Earls.

(c) We do agree that the court erred during the jury instruction when it stated, "I'm sure that you understand fully that only one person was killed. There are two charges of murder here. Only one person was killed, so *only one murder was committed*, but among the

decisions you will have to make today will be *whether the defendant is guilty of committing malice or felony murder,* and whether he's guilty of committing armed robbery." But, when Matthews objected and moved for mistrial at the conclusion of the charge, the court acknowledged that a slip of the tongue had occurred, denied a mistrial, but called the jury back for curative instructions, as follows:

> One offense which is alleged is malice murder. The second offense which is alleged is felony murder. . . . I was trying to make the point to you that although there are two charges of murder listed in this indictment, there was only one killing. I think I said to you something to the effect that while there are two charges of murder, only one murder was committed. A misstatement. It is your duty to find whether there is murder or not, whether the defendant is guilty or not guilty. That is an innocent misstatement on my part. . . . You absolutely are not to consider that this court has made any suggestion at all as to guilt or innocence of this Defendant. . . . It is for you to determine whether or not the killing which took place was murder, and if so, which type. . . . An innocent misstatement which I made, and I wanted no way for that to be influential to you concerning your verdict.

When asked if they understood, every juror responded affirmatively.

A mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error. *Williams v. State,* 267 Ga. 771 (2) (a) (482 SE2d 288) (1997). Because the erroneous statement was thoroughly corrected during the recharge, we find no possibility that the jury was confused or misled. Therefore, the error must be deemed harmless.

8. The court correctly sentenced Matthews for both felony murder and armed robbery. When the underlying felony is committed upon one victim and the felony murder charged in another count in the same indictment is committed upon another victim, the underlying felony does not merge with the felony murder conviction. *Kimbrough v. State,* 254 Ga. 504 (4) (330 SE2d 875) (1985); *Milledge v. State,* 266 Ga. 699 (2) (470 SE2d 439) (1996). Matthews was charged in separate counts of the indictment for the armed robbery committed on Johnson and the felony murder committed on Earls. The court did not err by entering convictions and sentences for both the felony murder of Earls and the armed robbery of Johnson. *Satterfield v. State,* 248 Ga. 538 (3) (285 SE2d 3) (1981). And since these offenses constituted Matthews' fourth serious felony conviction, the court was authorized to impose sentence under OCGA § 17-10-7 (c).

*Judgment affirmed. All the Justices concur, except Benham, C. J., who concurs specially.*

BENHAM, Chief Justice, concurring specially.

While I agree with the bottom line of the majority opinion and agree that the trial court erred in admitting evidence of a defense witness's first offender record, I cannot concur in the overruling of *Favors v. State*, 234 Ga. 80 (3) (214 SE2d 645) (1975). *Favors* has no application to this case because the witness here was a defense witness, not a prosecution witness as was the case in *Favors*. Thus, the majority opinion, in undertaking to overrule more than 20 years of appellate decisions, goes farther than is necessary to resolve this case.

Even if *Favors* had any application to the present case, I would not agree that it should be overruled. In deciding *Favors*, this Court was balancing the right of a defendant in a criminal case to show the untrustworthiness of a State's witness against the right of the witness under the first offender statute to prevent revelation of the fact that the witness has admitted committing a crime or has been found guilty of a crime. The conclusion was that a "lack of trustworthiness is shown by a verdict of guilty, or plea of guilty, whether or not a formal conviction has been entered," and that the right of the defendant to impeach must prevail over the right of the witness. Although the reasoning that led to that conclusion may have tracked the rationale of U. S. Supreme Court cases concerning the confrontation clause, the conclusion did not rely directly on the confrontation clause. Thus, there was no reason for *Favors* to distinguish between types of impeachment and there is no valid reason for doing so today. Even under confrontation clause analysis, I contend that the witness's lack of trustworthiness is a valid object of confrontation and, thereby, impeachment.

I cannot agree, therefore, that this Court erred in 1975 in deciding *Favors* or that a majority of this Court is correct today in overruling that decision.

DECIDED NOVEMBER 17, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997.

*Lovett Bennett, Jr.,* for appellant.
*Richard A. Malone, District Attorney, Jennifer E. Hildebrand, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.