# S98A1987. CARTER v. THE STATE.
(514 SE2d 19)

SEARS, Justice.

The appellant, Tony Carter, was convicted of the felony murder of his mother-in-law, Laverne Haselden; of the aggravated assault of his estranged wife, Marie Carter; and of the possession of a firearm during the commission of a felony.[1] On appeal, Tony contends, among other things, that the trial court erred in precluding him from offering evidence that Marie Carter had previously fired a gun at him, and that the trial court erred in failing to merge his conviction for the aggravated assault of Marie with his conviction for the felony murder of Laverne Haselden. We find no merit to these and other contentions raised by Tony, and thus affirm his convictions.

The evidence showed that Tony and Marie Carter separated in April 1996; that in May 1996, Tony discovered and kept a diary of Marie's which indicated that she was having affairs with three other men; and that in June 1996, Tony filed for divorce from Marie. The parties had two children, and on the afternoon of July 19, 1996, Marie and her mother drove to Tony's father's home, where Tony lived, to pick up the children. When Marie and her mother arrived, Tony's father told Marie that the children were in town with Tony's mother and would be back shortly. Marie and her mother decided to wait in Marie's car. Tony subsequently drove up in his truck, and asked Marie to come talk with him. According to Marie, she did so, and Tony asked her to walk down the road with him, which she refused to do. Marie testified that she then walked back to her car, and got in the driver's seat. Her mother was in the passenger seat. Marie stated that Tony walked up to her car window, pulled out her diary, and stated he wanted to talk to her about it. According to Marie, she did not talk to Tony about the diary, but told her mother that they should leave. Marie testified that Tony then pulled a gun from his pants' pocket, and that Marie's mother stated, "You're not going to do that." Marie stated that Tony then rapidly fired six shots, striking both her and her mother. Laverne Haselden was struck by one bullet in the left chin, with the bullet passing through her larynx

---

[1] The crimes occurred on July 19, 1996, and Carter was indicted on August 16, 1996, for felony murder, aggravated assault, and possession of a firearm during the commission of a felony. He was found guilty on all counts on October 31, 1997, and was sentenced that same day. He was sentenced to life in prison for the felony murder conviction and to consecutive terms of twenty and five years in prison for the aggravated assault and possession offenses. Carter filed a motion for new trial on November 25, 1997. The court reporter certified the trial transcript on February 17, 1998, and Carter filed an amended motion for new trial on April 2, 1998. The trial court denied Carter's motion for new trial, as amended, on June 29, 1998. Carter filed his notice of appeal on July 9, 1998, and the case was docketed in this Court on September 16, 1998. The appeal was submitted for decision on briefs on November 9, 1998.

and exiting at the base of the neck. Another bullet struck Laverne Haselden in the left shoulder, pierced one of her lungs, and lacerated her spinal column and subclavian artery. The medical examiner testified that he thought both of Laverne Haselden's wounds were primary entrance wounds and were not reentry wounds suffered after the bullet passed through another object.

Tony Carter testified that he discovered Marie's diary about the middle of May 1996, and that it indicated she had been having affairs with three different men. According to Tony, when he found the diary, he asked Marie who "BC" was. Tony testified that Marie responded that "you think it's Bernard Cook," and that that was all they discussed about the diary at that time. Tony, however, kept the diary. Tony also testified that after he discovered the diary, he became depressed and lost about 45 pounds. Tony testified that on the day of the shooting, when he took the diary to Marie's car and asked her if she wanted to talk about it, Marie responded by stating that what was in the diary "was all true," and that he should "get used to the fact of what was in there." Tony added that once Marie said this, he "pulled out the gun and . . . started shooting." Tony also testified that when he started shooting, he did not know what he was doing; that he just went blank and "snapped"; that he did not know the difference between right and wrong; and that he did not intend to shoot Marie or her mother. As for whether he was mad at Marie, Tony stated that Marie's refusal to talk with him or take a walk with him on the day of the shooting did not make him mad; that he "never" was mad; that nothing that happened that day made him mad; that he was not mad she was having affairs, but that he was hurt by them; and that "[t]hrough this whole thing, I've never got mad at my wife." On cross-examination, Tony reiterated that when he shot Marie and her mother, he just "snapped" because he was in shock and did not know right from wrong.

1. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Tony guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. In his first enumeration of error, Tony contends that the trial court erred in excluding evidence that Marie fired a gun at him on May 30, 1996. Tony contends that this evidence was relevant to show his emotional state and thus to support his insanity defense. Considering the limited relevance of this evidence to Tony's defense that he did not have the ability to distinguish between right and wrong on the day of the shooting, and considering the prejudicial impact of this evidence on Marie's character, we cannot conclude that the trial

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

court abused its discretion in excluding this evidence.[3]

3. Tony next contends that the trial court erred in permitting the prosecutor to ask him some questions about the contents of a letter that Marie wrote to him on June 2, 1996. Specifically, the prosecutor questioned Tony regarding whether Marie had expressed a desire to reconcile with Tony for the sake of their children, and had told Tony that she wanted them to remain friends. Tony contends that the contents of this letter were inadmissible self-serving statements that had no relevance to Tony's guilt. We conclude, however, that, even assuming the trial court erred in admitting the statements contained in Marie's letter, the statements were harmless considering the strength of the evidence against Tony and considering that other testimony about the couple's desire to reconcile was elicited by Tony and by the State without objection from Tony.[4]

4. Tony also contends that the trial court erred in refusing to give his requested charge on voluntary manslaughter. For the following reasons, we conclude that this contention is without merit.

Tony requested that the trial court charge the jury on the elements of voluntary manslaughter set forth in OCGA § 16-5-2 (a) and on the principle that

> where one shoots at another, intending to kill her, under circumstances that the killing, if accomplished, would be voluntary manslaughter, but the shot misses her and accidentally kills an innocent third person, the homicide will be voluntary manslaughter.

Even assuming that this latter request is a correct statement of the law regarding voluntary manslaughter,[5] we conclude that the trial court did not err in refusing to give Tony's requested charges on voluntary manslaughter. Tony testified unequivocally that he did not know what he was doing at the time of the shooting; that he just went blank and snapped because he was in shock; that he was not mad at Marie at any time leading up to and during the shooting; and that he did not know the difference between right and wrong. There

---

[3] See *Carr v. State*, 267 Ga. 701, 706-707 (4) (482 SE2d 314) (1997); *Hill v. State*, 259 Ga. 557, 559 (7) (b) (385 SE2d 404) (1989).

[4] *Wall v. State*, 269 Ga. 506, 510 (4) (500 SE2d 904) (1998).

[5] See *Foster v. State*, 264 Ga. 369, n. 2 (444 SE2d 296) (1994), in which this Court questioned whether a defendant who assaults an intended victim by shooting at him with a pistol, but strikes and kills an unknown and unintended victim, is entitled to a charge on voluntary manslaughter with regard to the death of the unintended victim. Arguably, Tony's situation presents an even less compelling reason for charging on voluntary manslaughter as to the death of Laverne Haselden, in that Tony was aware of her presence in the car when he starting firing a pistol in her direction. See generally LaFave & Scott, *Substantive Criminal Law*, Vol. 2, pp. 269-270 (1986).

was also no testimony by Tony or anyone else that Tony was angry or acted as a result of anger at the time of the shooting. For these reasons, there is not even slight evidence that Tony acted "as the result of a sudden, violent, and irresistible passion,"[6] and the trial court therefore did not err in refusing to give Tony's request to charge on voluntary manslaughter.[7]

5. Tony's final contention is that the trial court erred in failing to merge his conviction for the underlying aggravated assault of Marie Carter with his conviction for the felony murder of Laverne Haselden. We disagree. "When the underlying felony is committed upon one victim and the felony murder charged in another count in the same indictment is committed upon another victim, the underlying felony does not merge with the felony murder conviction."[8] For this reason, the trial court did not err in entering convictions and sentences for the aggravated assault of Marie Carter and the felony murder of Laverne Haselden.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 8, 1999.

*John A. Rumker,* for appellant.
*Richard E. Currie, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jayson Phillips, Assistant Attorney General,* for appellee.

---

[6] OCGA § 16-5-2 (a).
[7] *Duquette v. State,* 265 Ga. 152, 153 (2) (454 SE2d 500) (1995); *Gooch v. State,* 259 Ga. 301, 302-303 (3) (379 SE2d 522) (1989).
[8] *Matthews v. State,* 268 Ga. 798, 805 (8) (493 SE2d 136) (1997); *Hawkins v. State,* 260 Ga. 138, 139 (3) (a, b) (390 SE2d 836) (1990); *Kimbrough v. State,* 254 Ga. 504, 506-507 (330 SE2d 875) (1985); *Satterfield v. State,* 248 Ga. 538 (3) (285 SE2d 3) (1981).